**Donna L. ZAERR, Appellant,**

**v.**

**Jack B. ZAERR, Appellee.**

**No. 2–56666.**

Supreme Court of Iowa.

Oct. 16, 1974.

Robert F. Wilson, Cedar Rapids, for appellant.

James D. McCarragher, Iowa City, for appellee.

Submitted to MOORE, C. J., and UHLENHOPP, REYNOLDSON, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

This appeal requires us to decide which of the parties shall have custody of their two daughters, Vicky, age nine, and Tracy, age six. When the parents were divorced September 10, 1969, plaintiff Donna L. Zaerr received their custody. The decree was modified August 10, 1973, to shift their custody to defendant Jack B. Zaerr. Donna has appealed from the modification order. We affirm the trial court.

■ The first and governing consideration is the best interests of the children. In a modification proceeding, the noncustodial parent seeking custody must prove an ability to minister more effectively than the custodial parent to their well being. The specific question for us in this case, as it was for trial court, is whether the noncustodial parent established by a preponderance of evidence that conditions since the divorce decree had so materially and substantially changed that the best interests of the children made it expedient to award their custody to him. Pokrzywinski v. Pokrzywinski, 221 N.W.2d 283 (Iowa 1974); Crary v. Curtis, 199 N.W.2d 319 (Iowa 1972).

■ Even though our review is de novo we give weight to trial court findings of fact, especially when considering credibility of witnesses. As difficult as it is to assess credibility of live testimony, it is more difficult to assess credibility from a cold transcript.

The modification trial occurred at a time when the situation in the lives of both parents was unsettled. Donna had struggled since the divorce, always under severe economic pressure, to make a home for herself and four children, two sons from a prior marriage and the two daughters involved in this case. In June 1972 she started going with one James Patton. In December 1972 he became a regular occupant of her home and bed. He contributed little materially except an occasional purchase of groceries. Shortly after he entered the home her son Greg O'Brien, age 18 at trial, left because of conflict with Patton. Her other son, Bret O'Brien, age 13 at trial, left the home several months later for the same reason.

The boys resented Patton's efforts at discipline and the fact their mother started preparing meals to suit his tastes and not theirs. They also testified Donna began drinking alcoholic beverages more often and in greater quantity than in the past. They said she was "high" several times a week. There was evidence that Donna and Patton were publicly intoxicated on occasion.

Donna's job at Collins Radio, which she had held for several years, was in jeopardy because of absenteeism. Donna's father was upset with his daughter's conduct; he opposed Patton and fought publicly with him; he complained to her employer about her drinking and to the Sheriff and Johnson County Department of Social Services about her drinking, relationship with Patton, and care of the children.

Donna had continued to live in the small, partially unfinished two-bedroom home, located in a rural area near Solon, which was occupied by the parties before the divorce. The bedrooms were separated by a doorway without a door. Until they left the home, the two boys used one bedroom; Donna, Patton, and the two girls used the other.

There was evidence that Donna made inadequate babysitting arrangements for the children, especially during 1972, and she offered little in the way of discipline. From June to December 1972 she left the children with a babysitter as long as a week at a time without seeing them. A neighbor testified the girls were sometimes unfed and often unsupervised even when she was home. In 1973 Patton frequently acted as babysitter.

Jack Zaerr had held many jobs, but none for very long. Until taken to court in May 1971 he did not meet his child support obligations. Thereafter, however, he made his payments regularly including extra amounts on his arrearage. A stabilizing

influence on his life was a new marriage. His new wife, Darlene, had custody of two children from a prior marriage, a daughter, age 13 at trial, and a son, age 11 at trial.

At the time of trial they lived in modest circumstances in a small home adjacent to a tavern business owned and operated by them in Fort Madison. They were earning an adequate income. They also had a small equity in 70 acres of land near Memphis, Missouri, close to a comfortable three-bedroom home they had rented. But the tavern business was for sale. They planned to start a commercial campground and recreation area on the 70 acres. Much uncertainty surrounds this venture.

Regarding Donna, the trial judge found she had acquired a drinking problem which interfered with her care of the children. He also found she made inappropriate provision for care of the children during her absences. He disapproved of Patton's presence and role in the home, finding he too had a drinking problem and had been abusive to the children. He believed the two girls would be physically and emotionally jeopardized if they remained with their mother and would leave the home like the boys when they grew older. At the time of trial the children appeared to be normal and healthy. They had done fairly well in school.

Regarding Jack, the judge believed he had matured since the divorce, had become a successful businessman, and had entered a stable marriage. The judge was impressed by his wife and his prospects. He believed Jack and Darlene would provide a good home for the two girls.

The choice is uncertain and unsatisfactory. Considering the alternatives, giving deference to trial court's superior position from which to judge credibility of the witnesses, we believe the court made the right decision.

As much as it would appear desirable to wait a while longer to see if Donna might reorder her life and offer the children a better home, and to see if Jack's new business venture would materialize and the stability of his home persist, we recognize the children's welfare would not permit that kind of delay. Courts must act to prevent wounds from being inflicted on children and should not wait until injury occurs. They act on probabilities, not on certainties, and they must put the rights of children ahead of the competing custodial claims of parents. In re Marriage of Bowen, 219 N.W.2d 683, 688 (Iowa 1974).

We believe Jack established by a preponderance of evidence that conditions in Donna's home had so materially and substantially changed that the best interests of the children made it expedient to award their custody to him.

Trial court's order included visitation rights for Donna. They are secured by bond since the children may be living in Missouri. No complaint is made regarding these provisions.

Affirmed.