**In re the MARRIAGE OF F. Robert WOODWARD, Jr. and Judith A. Woodward.**

**Upon the Petition of F. Robert WOODWARD, Jr., Appellee,**

**and Concerning Judith A. WOODWARD (now Judith A. Woodward Graves), Appellant.**

No. 2–57592.

Supreme Court of Iowa.

April 16, 1975.

Alfred E. Hughes, of Hughes & Leifker, Dubuque, for appellant.

Fuerste, Carew & Coyle, Dubuque, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REYNOLDSON, and HARRIS, JJ.

HARRIS, Justice.

We affirm a decree of the trial court, challenged in this appeal, changing custody of a 13 year old girl from mother to father.

Petitioner (Bob) and respondent (Judy) were married June 10, 1959. Their marriage was dissolved June 1, 1971. Custody of their three children, Fredrick Robert III, Mona Jean, and John Duncan, was contested at the time of marriage dissolution. The dissolution decree placed all three in custody of Judy and accorded Bob reasonable visitation rights. Visitation terms were elaborately prescribed in a supplemental decree entered June 24, 1971.

Both parties have remarried and both new marriages appear stable and happy.

Bob is father of another daughter by his new marriage. He continues in an executive capacity in the communications industry. At the time of dissolution of his marriage with Judy, Bob's work called for extensive travel and much time away from home and family. A new position in the same industry requires little travel.

Since the dissolution Judy has completed nurses training. She is now married to a physician, Dr. John Graves. Dr. Graves was well acquainted with the three children, having served as pediatrician to the family at the time of the marriage between Bob and Judy.

This appeal involves custody only of Mona who was 13 at the time of hearing below (July 1974). Custody of Mona's brothers remains with Judy and is not challenged. After an extensive hearing the trial court found circumstances had changed since entry of the dissolution decree and that Mona's best interest now requires her placement with Bob.

Two factors were cited. One was Bob's new marriage, new position, and subsequent change of life style. A more important factor was a finding the stormy relationship between Judy and Mona had deteriorated to the point where a change of custody was required.

Judy maintained at trial and in this appeal the changes in Bob's life style were contemplated when the dissolution decree was entered. She insists her relationship with Mona is not unusually stormy and blames Bob for causing whatever trouble there is between mother and daughter.

I. Controlling rules are familiar. Difficulty arises not from their recitation but from their application.

"The first and governing consideration is the best interests of the children. In a modification proceeding, the noncustodial parent seeking custody must prove an ability to minister more effectively than the custodial parent to their well being. The specific question for us in this case, as it was for trial court, is whether the noncustodial parent established by a preponderance of evidence that conditions since the [dissolution] decree had so materially and substantially changed that the best interests of the children made it expedient to award their custody to him. (Citations).

"Even though our review is de novo we give weight to trial court findings of fact, especially when considering credibility of witnesses. As difficult as it is to assess credibility of live testimony, it is more difficult to assess credibility from a cold transcript." Zaerr v. Zaerr, 222 N.W.2d 476, 477 (Iowa 1974).

■■ Brothers and sisters should not be separated from one another without good

and compelling reasons. In re Marriage of Winter, 223 N.W.2d 165, 168 (Iowa 1974); Jones v. Jones, 175 N.W.2d 389, 391 (Iowa 1970). The wishes of the child, though not controlling, are entitled to some weight. They are entitled to less weight in a proceeding to change custody than in an original hearing. Jones v. Jones, supra, 175 N.W.2d at 391; Herron v. Herron, 258 Iowa 1052, 141 N.W.2d 562.

■ Finally where a person has lawfully cared for a child, properly providing for his social, moral and educational needs for a substantial period of time and the child has become attached to its environment the court is not justified in transferring custody except for the most cogent reasons. Jones v. Jones, supra, 175 N.W.2d at 391; Halstead v. Halstead, 259 Iowa 526, 531–532, 144 N.W.2d 861.

Although the background motives of the parents are disputed it is clear the application for change of Mona's custody was immediately prompted by Mona herself. When Bob picked Mona up for a scheduled weekend visit she gathered belongings she had hidden in bushes and told him she intended to move in with him. We find nothing in the record to indicate Bob suggested she do so. The plan was her own.

The central controversy between the parties is what impelled Mona to conceive such a plan. Judy believes it stems from Bob's deliberate undermining of the mother-daughter relationship. Judy offered evidence to show Bob was quick to supply permissive sympathy on each occasion Judy felt called upon to discipline Mona.

Judy's evidence in this regard is somewhat disquieting. Bob believes, has always believed, Judy dealt unfairly with Mona. He testified this was one of the difficulties leading to the dissolution of their marriage. As a result he freely intervened for Mona during and after the parties' marriage. We are not unmindful of the fact, even in the happiest of marriages, children tend where possible to play the love of either parent against the discipline of the other. Parenthood calls for married persons to be alert for such a natural tendency and adjustments for it are common. When marriage is terminated the propensity of a child to play one parent against the other can become a force strong enough to bring considerable anguish alike on parents and child.

Judy argues this happened here. She believes Mona's resentment of her is directly related to the assignment of household tasks. She believes the tasks would have been accepted and of value to Mona but for Bob's intervention. Judy's testimony is corroborated by Dr. Graves. It is also strengthened by Mona's own testimony which in some respects betrays the effects of over-indulgence. Judy and Dr. Graves argue that the change of Mona's custody will be a bad lesson for her in that she will feel free to run from her problems.

■ Bob's evidence was accepted by the trial court. It showed advanced hostility between mother and daughter. Judy conceded even members of her own family believed the mother-daughter relationship was dangerously strained. Mona's brother, 14 at the time of hearing and still residing with Judy, verified Mona's view of the mother-daughter relationship. He thought Mona had always been unfairly treated by their mother and thought all family relationships had improved in the few months Mona had then lived with Bob.

Although the question is not free from doubt we conclude the trial court was right in holding deterioration of the mother-daughter relationship necessitated a change of custody. Any advantage to Mona in learning not to run from her problems does not outweigh the potential damage which would result from the hostility shown.

■ Change of job and life style on the part of Bob would not, standing alone, justify change of custody. However it strengthens the grounds for the trial court's decree.

Affirmed.