**Upon the Petition of Eugene RICE, Appellee, and Concerning Joyce Orvetta RICE, Appellant.**

**No. 2-57434.**

Supreme Court of Iowa.

April 16, 1975.

Paul F. Christoffers, Chariton, for appellant.

Milani & Milani and Thomas L. Anders, Centerville, for appellee.

Heard before MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves questions of custody and visitation of a small child.

Appellee Gilbert Eugene Rice has been married three times and has one child—the subject of this proceeding. His first two marriages were of short duration; the second one was to appellant Joyce Orvetta Rice. Gilbert is a high-school graduate, earns about $12,500 annually as an electric-utility lineman, and owns some rental properties in addition to his home—all of which are encumbered. His two-bedroom home, which cost $5000, is a stucco house located on a highway at the edge of Chariton, Iowa, between a machinery auction establishment and a hog-sale barn. The house yard is littered with various discarded items.

The record does not reveal much about the early years of Joyce Orvetta Rice. She dropped out of high school. She is a good student, however, and later obtained an equivalency certificate. She and Gilbert married when she was 15 and he was 26. The marriage did not go well, for reasons the present evidence does not disclose.

Rebecca Lyn Rice was born to Gilbert and Joyce on May 10, 1971. In October 1971, Joyce left Gilbert and the baby and obtained employment. At one time Gilbert broke into the trailer Joyce occupied, so she moved to Ottumwa to get away from him. After Joyce left Gilbert and Rebecca, Gilbert took care of the child for about nine months with the help of baby-sitters. One of the sitters, approximately Gilbert's age, was Judy Richards, a single woman who had never married and had no children. She did not complete high school, and worked as a sitter and nurses' aid.

Eventually Gilbert placed Rebecca with his parents. They took care of her from August 1972 to January 1974, and did well with her.

On December 14, 1971, Gilbert commenced a dissolution proceeding. Joyce's attorney told her that if she contested custody of Rebecca both she and Gilbert might lose the child, so she did not defend. On November 28, 1972, the district court dissolved the marriage, awarded Gilbert custody of Rebecca, and granted Joyce visitation on alternate weekends.

In December 1972, Gilbert and Joyce decided to try to reconcile, and they lived together without remarrying. This did not work out. One of the reasons was that Gilbert desired the same privileges with Judy Richards. Eventually Joyce left. Later she lived with another man without marrying him. Meanwhile Judy moved in with Gilbert, likewise without matrimony.

At some point Joyce became acquainted with Fred Tarbell. Fred is an industrious individual, a university graduate, a three-year army veteran discharged with the

rank of first lieutenant, and an accountant employed by a large concern. Fred and Joyce eventually decided to marry.

On December 17, 1973, Gilbert and Judy married.

On January 5, 1974, Fred and Joyce married. Their marriage appears stable. At the time of the modification hearing in May 1974, they were expecting a child.

On January 15, 1974, Gilbert took Rebecca into his home from his parents' home. The evidence indicates that Judy could keep the child considerably cleaner and the home better ordered than she does. Gilbert and Judy testified that they have a stable marriage, but the testimony also shows that seven days after the marriage was solemnized Judy consulted a magistrate about an annulment. Some feeling seems to exist on the part of Judy, and also probably on the part of Gilbert, that Joyce should not have the right to visit Rebecca. Gilbert and Judy could have cooperated considerably better in connection with Joyce's visitations.

Fred's employer promoted him to a better position, in Chicago. Fred and Joyce found a suitable home in a Chicago suburb, and Joyce commenced the instant modification proceeding to get custody of Rebecca or, at the least, to obtain liberalization of visitation rights in light of the new situation. Fred joins Joyce in desiring to have Rebecca well taken care of. During visitations they have done well with the child.

After trial, the trial court dismissed the modification application. Joyce appealed.

I. The questions are, has an uncontemplated material change of circumstances occurred and if so, which of Rebecca's parents will better promote her best interests over the long run? We have recently stated the considerations involved in cases of this kind. Zaerr v. Zaerr, 222 N.W.2d 476 (Iowa).

We cannot discuss at length the numerous factors involved here, although we have tried to weigh all of them which the parties have called to our attention or we have found by examining the testimony. We are convinced that the intervening events since the original decree add up to an uncontemplated material change of circumstances. As to the long-range welfare of Rebecca, Joyce is more mature now, and we believe she would be a good mother. Clearly she has done well for the child during visitations. We believe too that Fred would be a good stepfather. Upon comparing the two natural parents and considering the surrounding circumstances, we conclude that Joyce should have custody. Norenberg v. Norenberg, 168 N.W.2d 794 (Iowa).

II. Gilbert should have the right to visit Rebecca from 8:00 o'clock on Saturday morning until 8:00 o'clock on Sunday evening on the first full weekend of each calendar month after procedendo is filed in district court, and also from 8:00 o'clock on Sunday morning until 8:00 o'clock on the evening of the second Sunday thereafter in the first full two weeks of each July hereafter. Gilbert is to provide Rebecca's transportation and is to notify Joyce at least 48 hours prior to exercising a right to visit the child.

III. The question of child support is not before us. We leave that issue open.

Reversed.