WATERMAN, Justice
(dissenting).
I respectfully dissent. I would affirm the district court that decided this case fairly and in the best interest of the children based on live testimony and the recommendations of an experienced guardian ad litem. Under the original decree, both parents agreed to continue living in the Southeast Polk Community School District, home to their extended families. That arrangement worked well for all concerned. Then the mother, without consultation or adequate warning, abruptly moved their children with her to Albia, seventy miles away. The move was for her own convenience and unrelated to any change in her employment. The district court correctly determined the father established a substantial change in circumstances warranting modification of the custody provisions of the original decree. The district court’s modification kept the children together with their father in their existing school district, consistent with the strong preference of the high-school-age daughter. We should not second-guess the district court’s ruling on appellate review of a cold transcript.
I. We Should Defer to the District Court’s Findings.
It is well-settled that “[bjecause [the] trial court was present to listen and observe the witnesses, we give weight to its findings.” In re Marriage of Zabecki, 389 N.W.2d 396, 398 (Iowa 1986). There are good reasons to defer to the district court’s factual findings:
A trial court deciding dissolution cases is greatly helped in making a wise decision about the parties by listening to them and watching them in person. In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented.
In re Marriage of Vrban, 359 N.W.2d 420, 423 (Iowa 1984) (citation omitted) (internal quotation marks omitted). We have recently reiterated “live, in-court testimony is preferable.” Book v. Doublestar Dongfeng Tyre Co., 860 N.W.2d 576, 598 (Iowa 2015); see also Burke v. Quick Lift, Inc., 668 F.Supp.2d 370, 382 n. 11 (E.D.N.Y. 2009) (“ ‘In determining credibility, there is nothing like the impact of live dramatis personae on the trier of the facts.’ ” (quoting Polaroid Corp. v. Casselman, 213 F.Supp. 379, 382-83 (S.D.N.Y.1962))).
“Even though our review is de novo we give weight to trial court findings of fact, especially when considering credibility of witnesses. As difficult as it is to assess credibility of live testimony, it is more difficult to assess credibility from a cold transcript.”
In re Marriage of Woodward, 228 N.W.2d 74, 75 (Iowa 1975) (quoting Zaerr v. Zaerr, 222 N.W.2d 476, 477 (Iowa 1974)). The court of appeals recently elaborated on the fact-finding advantages enjoyed by the district court’s front-row seat:
A witness’s facial expressions, vocal intonation, eye movement, gestures, posture, body language, and courtroom conduct, both on and off the stand, are not reflected in the transcript. Hidden attitudes, feelings, and opinions may be detected from this “nonverbal leakage.” Thus, the trial judge is in the best position to assess witnesses’ interest in the trial, their motive, candor, bias and prejudice.
*39 In re Marriage of Rademacher, No. 11-0798, 2011 WL 5868041, at *3 (Iowa Ct. App. Nov. 23, 2011) (quoting Thomas San-nito & Peter J. McGovern, Courtroom Psychology for Trial Lawyers 1 (1985)).
We should give even greater deference to the district court’s findings on close questions. In re Marriage of Udelhofen, 444 N.W.2d 473, 474 (Iowa 1989) (“The deference we pay to trial court findings is especially strong here. As will appear, the case turns, not so much on what was said and done, as upon the implications of the words and actions of the parties.”); In re Marriage of Reed, No. 09-0029, 2009 WL 4122884, at *6 (Iowa Ct.App. Nov. 25, 2009) (“In close cases such as this, we give careful consideration to the district court’s findings.”); In re Marriage of Whalen, 569 N.W.2d 626, 630 (Iowa Ct.App.1997) (“The issue of whether Charles has met the heavy burden for modification is close. We give weight to the fact findings of the trial court, particularly as to credibility of witnesses, and affirm.”).
The majority, by second-guessing the district court’s equitable resolution of a close case, will spawn more appeals, increasing the costs to litigants in family law cases, many of whom can ill-afford an appeal. The better practice is to affirm the district court’s decision in close cases. Against this backdrop, I will now focus on the evidence supporting the district court’s decision in Ernie’s favor.
II. Tracy’s Move to Albia Was Motivated by Her Own Self-Interest, Not the Best Interests of the Children.
The district court found, “Tracy’s decision to relocate is premised primarily on her wants, rather than the children’s best interests or their needs.” When Tracy moved, she had not yet sold her house and continued to commute to work in Des Moines. Her new husband, Rob, had lived with her in Des Moines for nearly two years. Rob’s job required frequent travel and did not demand that he live in Albia. Tracy testified that one of the primary reasons for her move was that she could legally only have two horses in Des Moines.[9] Tracy uprooted the children from their close family and school relationships in Southeast Polk primarily so that she could pursue her own interest in horses and rodeo.
“Our appellate decisions which have previously addressed the issue of a change in residence as a ground for modification generally focus on the motivation behind the move, as well as the overall impact of the move on the children.” Dale v. Pearson, 555 N.W.2d 243, 245 (Iowa Ct.App.1996). In re Marriage of Frederici was a seminal case establishing the burden for modification of child support when the custodial spouse sought to move out of state. 338 N.W.2d 156, 158 (Iowa 1983). We found it significant that the mother’s relocation in that case was to pursue a “unique and promising career opportunity.” Id. at 160. We affirmed the judgment of the district court, vacating the court of appeals decision. Id. at 161. Unlike in Frederici, Tracy was not motivated by a new job opportunity, but by her desire to raise more horses for her personal recreation.
Iowa appellate courts have not hesitated to affirm custody modifications when a parent relocates for reasons of personal preference rather than for work. In In re Marriage of Quirk-Edwards, we affirmed a modification giving physical custody to a father based on a mother’s relocation four months after the divorce. 509 N.W.2d 476, *40 480 (Iowa 1993). We concluded that the mother had no good reason for making the move. Id. at 479. In Dale, the court of appeals affirmed the district court’s modification transferring physical custody to the father after the mother moved in with her new husband. 555 N.W.2d at 244, 246. The Dale court concluded that when the mother moved without having new employment, she “showed no consideration for the overall welfare of [the child] and her relationship with [the ■ father].” Id. at 246. The same is true here.
The district court correctly concluded that a modification of custody was appropriate, given Tracy’s motivations and actions. Tracy did not move to advance her career or to seek out new opportunities for the children. The children had more educational opportunities, and church and family connections in Des Moines. My de novo review confirms Tracy moved for her own benefit despite the impact on their children or Ernie, who shared joint custody. The move tore the children away from their friends, their school activities, and significant time they could spend with their father and extended family.
III. The Best Interests of the Children Are Served by Remaining with Ernie.
I agree that a parent requesting modification of custody bears a heavy burden, and a custodial parent’s relocation does not automatically constitute a significant change in circumstances. In re Marriage of Frederici 338 N.W.2d at 158, 161. However,
[i]n determining whether removal should be prevented, the trial court must consider all of the surrounding circumstances. They include the reason for removal, location, distance, comparative advantages and disadvantages of the new environment, impact on the children, and impact on the joint custodial and access rights of the other parent.
Id. at 160.[10] Because custody cases are fact specific, “[p]rior cases have little prec-edential value; we must base our decision primarily on the particular circumstances of the parties in this case.” In re Marriage of Weidner, 338 N.W.2d 351, 356 (Iowa 1983). The most important factor is' the best interests of the children. In re Marriage of Hansen, 733 N.W.2d 683, 696 (Iowa 2007); In re Marriage of Leyda, 355 N.W.2d 862, 865 (Iowa 1984) (stating that the children’s best interest is the “controlling consideration”).
Tracy’s move interfered not only with the children’s ability to maintain their relationship with Ernie, but with their extended families, sports teams, and church communities. There are specific educational opportunities available in the Southeast Polk school district not found in the Albia school district. The district court correctly found its modification of custody was in the best interest of the children.
*41 A. The Children’s Relationship with Ernie and Other Family Members. The court of appeals has observed that relocation “can present significant obstacles to regular and active visitation by the noncustodial parent.” Dale, 555 N.W.2d at 245. The majority gives too little weight to the disruption Tracy’s move caused the children. Their son and daughter’s extended family, including all four grandparents, live in the Des Moines area. During the original dissolution proceedings, Tracy bought a home in the Southeast Polk school district with court approval. Ernie, in reliance, purchased a lot to build a home near Tracy’s and close to the children’s schools. While his new home was under construction, Ernie rented in the same neighborhood so he could be actively involved in the children’s lives. Ernie was granted extraordinary visitation under the original decree. Tracy’s sudden and unannounced move to Albia deprives their children of more than fifty Thursday evenings spent with Ernie annually. Ernie testified about the missed opportunity to spend time with their son and daughter:
A. Yeah. I mean, I could go — if I had a ball game, I could go catch the ball game. I could go catch some practice. I could go have lunch with them — if I wasn’t working — at the school.
Q. And that’s changed since the move; isn’t that correct? A. Yes.
Q. It’s been a great struggle to stay as involved, even to some minor degree, with these kids? A. Right, it has.
The GAL’s report also highlighted the loss of parenting time as the biggest disadvantage of the children’s move to Albia:
In terms of disadvantages, the biggest disadvantage for the kids is clearly the loss of the Thursday nights with their dad. Additionally, both kids share a much stronger bond with Ernie’s wife. Dawn than they do with Rob (which is likely due to the fact that Dawn has been involved in their lives longer), and they both expressed that seeing Ernie and Dawn every other weekend is not enough. I also see the distance as a disadvantage, especially given the Monday morning drives to Albia and the uncertainty of Iowa weather.
Tracy’s move significantly cuts down on the contact Ernie can reasonably have with their son and daughter and makes it more difficult for the children to have an ongoing relationship with Ernie and other family members.
We have noted “a growing body of scholarship suggests that the continued presence and involvement of both parents is often beneficial to the lives of children.” In re Marriage of Hansen, 733 N.W.2d at 693. It is a legislative goal for children of divorced parents to have as much ongoing contact as possible with the noncustodial parent. Iowa Code § 598.41(1)(c) (2013) (“The court shall consider the denial by one parent of the child’s opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement.”). To support these goals,
[pjarents in accepting an award of joint custody accept a responsibility to communicate with each other and to support the other parent’s relationship with the child. Parents must put away their personal animosities toward each other and work together to meet the children’s needs. Substantial contact with both ' parents is one of these needs. Children of a divorce have a need to maintain meaningful relationships with both parents.
In re Marriage of Fortelka, 425 N.W.2d 671, 672 (Iowa Ct.App.1988). Ernie, true to his extraordinary visitation schedule, actively participated in the children’s lives, serving as a line coach for his son’s football *42 games, visiting the children during lunchtime at school, and stopping by their home in the evenings. Tracy’s move to Albia sharply curtails the amount of time Ernie is able to spend with their children.
B. Tracy’s Lack of Communication Makes It Unlikely She Will Support an Ongoing Relationship with Ernie. The district court stated, “The rather [dictatorial] non-communicative manner in which [Tracy’s move to Albia] was executed demonstrates a lack of cooperative parenting that would only be exacerbated by physical distance between the households.” A primary physical custodian has the responsibility to engage with the other parent in serious decisions concerning joint custody. In re Marriage of Mayfield, 577 N.W.2d 872, 874 (Iowa Ct.App.1998) (“We consider [the mother] making these decisions without [the father’s input adverse to her position.”). Ernie discovered Tracy had put her house on the market when their daughter received a text from a friend asking about the for-sale sign there. Ernie first learned of Tracy’s plan to move the children when their daughter called him in tears two days before Tracy emailed him notification. When Ernie applied for a temporary injunction to prevent Tracy from taking the children to Albia, Judge McLellan observed, “[T]he manner in which [Tracy] acted in informing [Ernie] of the move and her failure to communicate her decision with him is disturbing and should have been handled better.” Tracy also posted disparaging comments about Ernie and the legal system on social media that their children could see. The move to Albia strained Tracy’s relationship with their daughter. On one occasion, they slapped each other. On another occasion, matters escalated to the point that Tracy called the police to confront their daughter.
The majority downplays Tracy’s behavior preceding her decision to uproot the children from the agreed school district. Yet, every district court judge involved in this case has expressed concern about Tracy’s poor communication with Ernie and her pattern of unilateral decision-making disparaging Ernie’s rights. Tracy repeatedly substituted motion practice for dialogue. For example, she filed a contempt action against Ernie on December 29, 2006 — just two months after the decree of dissolution — over payment of medical expenses. Ernie, who had paid the expenses before he was served with papers, responded with his own claim for contempt against Tracy for obstructing his access to their children. The district court found that Tracy
is clearly demonstrating her unwillingness to promote and enhance the relationship between the children and [Ernie]. There is clear hypocrisy in Tracy’s attitude in this respect.... This court feels much the same about Tracy’s behavior and attitude as did Judge Lloyd when, early on in the case, he addressed the parties’ counter applications for contempt. In a ruling entered April 20, 2006 Judge Lloyd dismissed each party’s application against the other and chastised Tracy for seeking contempt against [Ernie] when her behavior was disingenuous.
Despite these admonitions by two district court judges, Tracy continued to file unfounded contempt actions, twice in October of 2007 and again in October of 2008. These contempt actions are symptomatic of Tracy’s issues communicating with Ernie. See In re Marriage of Whalen, 569 N.W.2d at 628-29 (“We find [the mother’s] decision to make provisions for the move without consulting [the father] a violation of the dictates of the joint custody. This decision indicates an intention on her part *43 not to assure their father’s continual involvement in the children’s lives.”).
The past is prologue. The best predictor of what someone will do tomorrow is what he or she did yesterday. The manner in which Tracy handled her move to Albia shows her unwillingness to support Ernie’s relationship with the children going forward. See In re Marriage of Winnike, 497 N.W.2d 170, 174 (Iowa Ct.App. 1992) (“In determining what is in the best interests of the child we can look to a parent’s past performance because it may be indicative of the quality of the future care that parent is capable of providing.”). The district court correctly found the move to Albia would exacerbate the relationship problems resulting from Tracy’s poor communication and disingenuous behavior. The trial judges who personally observed the testimony of Tracy and Ernie are better positioned than our court to make that determination.
C. The Opportunities Available at Southeast Polk. The majority fails to note specific opportunities available in Southeast Polk for the daughter’s career interest as a veterinarian. The GAL’s report stated:
Her preference, as she described to me, is based primarily upon her interest in a career in equine veterinary medicine. There are specific classes available at Southeast Polk which will help M.H. prepare for such a course of study. Additionally, M.H. wanted to study French and it is not offered in Albia. Finally, she also stated that there are many more options for extra-curricular activities, classes, and clubs at Southeast Polk.
Ernie testified that Southeast Polk schools also had specific opportunities allowing students to obtain college credit. Tracy moved the children to a new district in the middle of the school year, with a scant few weeks’ notice, when they were already enrolled in athletics and activities in Southeast Polk for the spring semester. All of the children’s medical care had taken place in Des Moines, and they were able to participate in both rodeo and extracurricular activities in Southeast Polk before their move. Both children were also involved in church in Des Moines. The daughter had difficulty making new friends in Albia, and her studies suffered in the weeks leading up to the modification trial.
In In re Marriage of Frederici, we evaluated the relative opportunities the two locations offered the children. 338 N.W.2d at 160 (“On the plus side, Littleton appears to be a nice city, and the Denver metropolitan area offers advantages comparable to those in the Des Moines area. With improvement in her income, Virginia should be able to provide the children with the same material advantages they had in Des Moines.”). There are specific educational opportunities available at Southeast Polk that are unavailable to the children in Al-bia. Further, there are educational and medical advantages to the larger school district and hospital systems in Des Moines. The district court correctly relied on those factors in determining the best interests of the children.
IV. The Daughter’s Preference to Remain with Ernie Should Be Given More Weight.
The daughter’s preference to live with her father was just one factor the district court and GAL relied on in concluding physical custody should be modified, but I address it separately because I do not believe the majority gives enough weight to her preference. Our law on the preference of a minor is well-settled:
It is also an almost universal rule that when a child is of sufficient age, intelligence, and discretion to exercise an en *44 lightened judgment, his or her wishes, though not controlling, may be considered by the court, with other relevant factors, in determining child custody rights.
Jones v. Jones, 175 N.W.2d 389, 391 (Iowa 1970). The child’s preference “is given some weight, but less weight in a modification than in an original custodial determination.” In re Marriage of Mayfield, 577 N.W.2d at 873.
Iowa Code section 598.41(3)(f) provides that in considering what custody arrangement is in the best interests of the minor child, the court shall consider whether the custody arrangement is in accord with the child’s wishes or whether the child has strong opposition, taking into consideration the child’s age and maturity.
In re Marriage of Ellerbroek, 377 N.W.2d 257, 258 (Iowa Ct.App.1985). There, the court of appeals discussed “numerous factors” when determining how to weigh a minor child’s testimony: age and educational level, strength of the preference, intellectual and emotional makeup of the child, relationship with family members, reason for the decision, the advisability of recognizing teenager’s wishes, and the recognition that we are not aware of all of the factors that influenced the decision. Id. at 258-59.
Ernie and Tracy’s daughter, a high school sophomore, is old enough to have a say. She strongly preferred living with her father in the Southeast Polk school district and clashed with her mother in Albia. She wants to attend school at Southeast Polk to follow her career aspirations to be a veterinarian and take advantage of other educational offerings available there. The GAL’s report states:
I believe that ... M.H.’s preference should be given significant weight. She is an intelligent young woman with an incredibly strong preference; she shares a close relationship with both Ernie and Dawn, and her preference is not based solely upon the discord in her relationship with Tracy. I also believe, unequivocally, that it is in both kids’ best interest to remain together and not to be separated from each other.
I agree. Moreover, the GAL and district court judge are better positioned than our appellate courts to determine the weight to be given the daughter’s preference.
For all these reasons, I would vacate the court of appeals decision and affirm the district court’s modification ruling.
WIGGINS and MANSFIELD, JJ., join this dissent.

. Tracy testified she usually required space for three to five horses, depending on family needs. During the pendency of this appeal, she acquired a sixteenth horse.

. In re Marriage of Frederici was decided in 1983. In 2005, the legislature enacted section 598.21D, stating:
If a parent awarded joint legal custody and physical care or sole legal custody is relocating the residence of the minor child to a location which is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded, the court may consider the relocation a substantial change in circumstances. Iowa Code § 598.21D (2007). The plain language of the statute is permissive ("the court may consider"). A move of more than 150 miles alone may not be a substantial change under some circumstances, and a move of less than 150 miles may constitute a substantial change under other circumstances. Thus, the factors discussed in Frederici remain relevant.