# IN THE COURT OF APPEALS OF IOWA

No. 17-0237
Filed June 7, 2017

**IN THE INTEREST OF M.M.,**
**Minor Child,**

**R.M., Father,**
    Appellant,

**K.C., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

Parents appeal from the juvenile court order terminating their parental rights in their child pursuant to Iowa Code chapter 232 (2016). **AFFIRMED AS TO THE FATHER AND REVERSED AND REMANDED AS TO THE MOTHER.**

Colin R. McCormack of Van Cleaf & McCormack Law Firm, L.L.P., Des Moines, for appellant father.

Karmen R. Anderson of The Law Office of Karmen Anderson, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kristi A. Traynor, Assistant Attorney General, for appellee State.

Brent Pattison and Joseph Reed of Drake Legal Clinic, Des Moines, guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

The mother and the father of M.M. appeal from the juvenile court order terminating their parental rights in M.M. The juvenile court terminated the parents' respective rights pursuant to Iowa Code chapter 232.116(1)(h) (2016). The mother contends the State failed to prove by clear and convincing evidence the grounds authorizing termination of her parental rights. The father does not challenge the State's case. Instead, he argues, if the mother prevails on her appeal, then his parental rights should also not be terminated. "We review proceedings terminating parental rights de novo." *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

"[T]he relationship between parent and child is constitutionally protected." *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). "[T]he custody, care, and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Id.* (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)). At the same time, "[t]he State has a duty to assure that every child within its borders receives proper care and treatment, and must intercede when parents fail to provide it." *In re A.M.*, 856 N.W.2d 365, 376 (Iowa 2014).

Iowa Code chapter 232 codifies the balance our legislature has struck between these competing interests. Pursuant to section 232.116(1), the State must first prove a statutory ground authorizing the termination of a parent's rights. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Second, pursuant to section 232.116(2), the State must prove termination of parental rights is in the best interest of the child. *See id.* Third, if the State has proved both the

existence of statutory harm and termination of a parent's rights is in the best interest of the child, the juvenile court must consider whether any countervailing considerations set forth in section 232.116(3) should nonetheless preclude termination of parental rights. *See id.* These countervailing considerations are permissive, not mandatory. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016). "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011) (citing *In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993)).

The State has the burden to prove its case by clear and convincing evidence. *See* Iowa Code § 232.96. "Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt." *In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995). It is the highest evidentiary burden in civil cases. It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence. *See id.* This significant burden is imposed on the State to minimize the risk of an erroneous deprivation of the parent's fundamental liberty interest in raising his or her child. *See Santosky v. Kramer*, 455 U.S. 745, 759 (1982). We therefore cannot rubber stamp what has come before; it is our task to ensure the State has come forth with the quantum and quality of evidence necessary to prove each of the elements of its case. *See id.* at 769 ("A majority of the States have concluded that a 'clear and convincing evidence' standard of proof strikes a fair balance between the rights of the natural parents and the State's legitimate concerns. We hold that such a standard adequately conveys

to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process.").

The juvenile court terminated each parent's respective rights pursuant to section 232.116(1)(h). This section requires the State to prove by "clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." Iowa Code § 232.116(1)(h)(4). "[A] child cannot be returned to the parent under Iowa Code section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication." *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). We have interpreted this to mean the State must establish the child would be exposed to "an appreciable risk of adjudicatory harm within the meaning of section 232.102" if returned to the parent's custody. *See In re M.S.*, 889 N.W.2d 675, 683 (Iowa Ct. App. 2016).

We first address the father's appeal. The father asserts no challenge of his own. Instead, he argues if the mother prevails on her appeal, then he should prevail on his appeal. This does not present a claim for review. "[I]n termination of parental rights proceedings each parent's parental rights are separate adjudications, both factually and legally." *In re D.G.*, 704 N.W.2d 454, 459 (Iowa Ct. App. 2005). Supporting the mother's petition and claiming he should also prevail "does not challenge the factual and legal reasons associated with and supporting the termination of [his] parental rights." *Id.* Although the father has filed his own petition and not officially "joined" in the mother's petition, the practice is impermissible for the same reasons. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) ("The father's only basis for the motion dealt with the

change in the mother's living situation and how that should have prevented the termination of her parental rights. He did not have standing to assert that argument on her behalf in an effort to ultimately gain a benefit for himself, that is, the reversal of the termination of his parental rights."). Because the father has not presented any cognizable challenge to the termination of his parental rights, we affirm the termination of the father's parental rights.

We address the mother's appeal. This case was initiated following a single incident of domestic violence between the father and the mother occurring in July 2015 and perpetrated by the father. The child at issue, M.M., was present in the home, although she was only a month old. Also present in the home was the mother's older child, S.H., by another father. M.M. was eventually removed, and the family was directed to obtain certain services. The father was directed to attend a domestic violence program and substance-abuse treatment, among other things. He was largely non-compliant with much of the services directed. The mother was directed to, among other things, cease contact with the father and avail herself of domestic violence therapy. Throughout much of the life of this case, the mother made false representations to the department of human services and the juvenile court regarding her relationship with the father. She denied any ongoing relationship with the father while she maintained a covert relationship with him—ultimately not so covert when she became pregnant with his child. After the mother became pregnant, she relocated from Iowa to live with her mother in Missouri. The mother testified she chose to relocate to obtain a fresh start and have a safer environment for herself and her children. The mother gave birth to the child while in Missouri. At the time of the termination

hearing, the mother continued to reside in Missouri with the newborn child in her custody and care. The mother continued to exercise visitation with M.M. and S.H.

On de novo review, we conclude the State failed to prove the child would be exposed to an appreciable risk of adjudicatory harm if returned to the mother's custody. The mother herself does not present a risk of harm to the child. The mother is somewhat lower functioning but not limited in any manner that would pose a risk of harm to the child. She is employable. She has no criminal history. She has no history of using controlled substances. She testified she used to binge drink on weekends but stopped drinking. Her substance-abuse counselor corroborated the mother's testimony. Most compelling is the fact the mother retains custody of her younger child and is allowed unsupervised visitation with her older child. The social worker testified the mother is "appropriate with both children [M.M. and her younger sister]." This evidences the mother can provide care for the child without risk of harm. Further, as a matter of policy, "[o]ur supreme court has held that wherever possible brothers and sisters should be kept together." *In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994) (citing *In re L.B.T.*, 318 N.W.2d 200, 202 (Iowa 1982)).

We do not minimize the State's concern regarding the risk of domestic violence or the harms of domestic violence. However, in this case, the State ignores credible evidence the mother has sought to improve her life, generally, and address the risk of domestic violence, particularly. The social worker testified the mother engaged in the services offered. She was consistent with substance-abuse treatment. She was receptive to Family Safety, Risk, and

Permanency (FSRP) services. She was cooperative with the safety plan. The mother engaged in domestic violence therapy. The therapist testified the mother has made good progress. The therapist testified the mother was regular in her appointments. The mother learned to understand domestic violence and its causes. The therapist testified the mother learned to understand healthy relationships. The mother learned about safety planning and how to avoid harm to the children. The therapist also testified the mother moved to Missouri to be in a healthier and safer environment for her children. While earlier reports suggest the mother lacked insight into the issue of domestic violence, her testimony at the termination hearing suggests greater awareness of the issue and the need to address it. *See In re T.C.*, No. 09-1169, 2009 WL 3775248, at *2 (Iowa Ct. App. Nov. 12, 2009) (considering parenting progress in determining child could be safely returned to mother's care).

Finally, there is not sufficient evidence to show the father poses a material risk of harm to the child at issue. This case arose out of a single incident of domestic abuse. While any single incident is one too many, we are not presented with a case where the father has a lengthy history of violence. The mother has moved away from the father. The mother has obtained insight into issues of domestic violence, including prevention and coping mechanisms. She resides with her family and has an additional layer of protection because of them. The social worker testified she communicated with the Missouri department of human services regarding the mother's case, including the social worker's concerns regarding the risk of domestic violence posed by the father. The social worker testified Missouri was not taking any action to remove the newborn child

from the mother, to the best of her knowledge. The social worker also testified she did not have any concerns the father was in Missouri with the mother and the mother has not allowed the father access to the youngest child while she was in Missouri.

The State has not met its demanding burden of proof in establishing a statutory ground authorizing the termination of the mother's parental rights. We reverse and remand this matter for further proceedings.

**AFFIRMED AS TO THE FATHER AND REVERSED AND REMANDED AS TO THE MOTHER.**

Doyle, J., concurs; Vogel, P.J., partially dissents.

**VOGEL, Presiding Judge.** (concurring in part and dissenting in part)

I respectfully dissent from the majority's decision to reverse this termination of parental rights as to the mother, but I concur as to the father. This is a case that largely turns on the district court's assessment of the credibility of the witnesses, in particular, the mother's credibility. While we do not adopt the district court's findings without our own scrutiny of the record, we do defer to the district court's credibility findings, as has so often been repeated in our case law, because we were not present to observe the witnesses' testimony but must rely on the cold record. *In re Marriage of Wegner*, 434 N.W.2d 397, 400 (Iowa 1988) (Harris, J., dissenting) ("One who personally observes holds a clear advantage over us who learn the case from a cold record.").

In this case, the same district court judge heard testimony during a number of hearings beginning with the adjudicatory hearing in October 2015. The judge was therefore able to assess the credibility of the various witnesses over the course of nearly one year. The final hearing—the termination hearing—began on October 5, 2016, and concluded on November 30, 2016, after five days of testimony, receipt of exhibits, and arguments of counsel. In its ruling, the district court found the mother continued to lack insight into the domestic-abuse and substance-abuse issues that lead to this child's removal from the home. In particular, the court noted:

> The Court recognizes Mother's attorney tried hard to rehabilitate her client's statements on direct examination to show Mother acknowledges the domestic assault, has gained insight, and could safely parent this child. After directly observing Mother for the past year and during this trial, the Court finds Mother can be led to parrot the "correct" answer to the questions posed. However, the County Attorney's direct examination showed Mother has no real or

> independent understanding of what domestic violence is or its impact on children. Alternatively, when questions are asked in an open ended manner, Mother continues to state the July [2015] incident was just a playful interaction between her and Father. Further her behavior immediately following the incident, and then throughout the Child in Need of Assistance case, show[s] she does not recognize their relationship is abusive.

This is the credibility assessment that could only be made by the district court judge who presided over this case from its inception and should not be upset by our examination of the cold record. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (noting we give deference to the juvenile court's assessment of credibility); *see also In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989) ("As will appear, the case turns, not so much on what was said and done, as upon the implications of the words and actions of the parties. In resolving such a case a trial court, as first-hand observer of witnesses, holds a distinct advantage over an appellate court, which necessarily must rely on a cold transcript."); *In re Marriage of Woodward*, 228 N.W.2d 74, 75 (Iowa 1975) ("As difficult as it is to assess credibility of live testimony, it is more difficult to assess credibility from a cold transcript." (citation omitted)).

In addition, the department of human services worker testified that the mother can repeat back things that she has learned from the services provided but continues to lack a protective capacity for keeping M.M. safe. The guardian ad litem, both in closing argument as well as on appeal, stressed the mother's lack of insight into the domestic abuse and other issues which lead to the termination of the mother's parental rights. It is clear that when a parent cannot protect a child from harm, the statutory ground of Iowa Code section

232.116(1)(h)(4) (2016)—"the child cannot be returned to the parent's custody at the present time"—has been satisfied.

I would affirm the termination of the mother's parental rights.