**In re the MARRIAGE OF Marilyn E. JUNKINS and Gary Lou Junkins.**

**Upon the Petition of Marilyn E. Junkins, now Marilyn E. Parks, Appellant,**

**and concerning Gary Lou Junkins, Appellee.**

No. 3–58711.

Supreme Court of Iowa.

April 14, 1976.

Hugh V. Faulkner, of McCoy & Faulkner, Oskaloosa, for appellant.

Greg A. Life, of Life, Davis & Life, Oskaloosa, for appellee.

Heard before MOORE, C. J., and LeGRAND, UHLENHOPP, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

We affirm the judgment of the trial court changing custody of one of the parties' three children from mother to father.

The marriage of Marilyn E. Junkins (Marilyn) and Gary Lou Junkins (Gary) was dissolved May 29, 1973 after about 15 years. Custody of their three children was awarded Marilyn.

On July 2, 1975 Gary filed an application to modify the decree. Among other things, he sought custody of their oldest son Marty (born April 4, 1960). Marilyn resisted the application. The trial court transferred custody of Marty to Gary.

The parties have two other sons: Brent Lou (born November 25, 1964) and Shawn Eric (born September 27, 1967). This appeal involves custody only of Marty; the parties agree his two younger brothers should remain with their mother.

Both Marilyn and Gary have remarried and both new marriages appear stable and happy. Both stepparents appear genuinely interested in Marty. The families live on farms only several miles apart.

The trial court heard the testimony of both parents, both stepparents, both grandfathers and Marty himself. Marty expressed a strong desire for the change later ordered.

The changed circumstances found by the trial court stem from the two remarriages. Gary's remarriage was shown to improve his ability to provide Marty with a suitable home. Marty had developed a fine relationship with his stepmother.

Marilyn's remarriage, on the other hand, was shown to have been disquieting to Marty. Marty had not developed a close relationship with his stepfather. It could not honestly be said the relationship was hostile but it was quite obviously strained and in sharp contrast with the easygoing friendship developed between Marty and his stepmother.

Tension between Marty and his stepfather does not appear to have resulted from fault on the part of either but rather from a difference in temperaments and interests. The record discloses Marty to be a bright, 15 year old student with excellent scholastic achievements. His stepfather's interests tend more toward the outdoors. Marty resented his stepfather's disciplinary efforts toward his two younger brothers.

The difficult and controlling question for the trial court was whether the differences between Marty and his stepfather were real or whether the tensions developed only as a normal reaction to the discipline necessary for a teenager.

I. Governing principles are not disputed except as to their application. They were explained in *Davis v. Davis,* 237 N.W.2d 455, 457 (Iowa 1976). Under rule 344(f)(15), Rules of Civil Procedure, the first and governing concern is the best interest of the child. The noncustodial parent seeking a change in custody must prove an ability to minister more effectively than the custodial parent. We accord weight to the findings of the trial court in recognition of its superior position to observe the conduct of all witnesses including the parties. *Paxton v. Paxton,* 231 N.W.2d 581, 584 (Iowa 1975).

After applying these principles to the facts outlined above we affirm the trial court. Although we have many times said authorities are of little aid in such cases we note the question here presented is quite similar to that involved in *In re Marriage of Woodward,* 228 N.W.2d 74 (Iowa 1975). In both cases the question is close. In both cases we are concerned with the principle brothers or sisters should not be separated from one another without good and compelling cause. Both cases call for application of the principle the wishes of the child, though not controlling, are entitled to some weight. Such wishes are entitled to less weight in a proceeding to change custody

than in an original hearing. Both cases involve the danger a child might tend to play the love of one parent against the discipline of the other. We reach the same conclusion in this case we did in *Woodward*.

We agree the circumstances have changed sufficiently so that custody of Marty should now be entrusted to his father.

AFFIRMED.