Upon the Petition of Tim L. ANDERSON, Appellee,

And Concerning

Kelli Elliott, Appellant.

No. 94–1375.

Court of Appeals of Iowa.

Feb. 28, 1995.

DuWayne J. Dalen of Brierly Law Office, Newton, for appellant.

C. Jean Pendleton of Charnetski, Olson, Lacina & Pendleton, L.L.P., Grinnell, for appellee.

Heard by DONIELSON, C.J., and SACKETT and HABHAB, JJ.

DONIELSON, Chief Judge.

This is an appeal from an action to modify custody. Our review of this matter is de novo. *In re Marriage of Montgomery*, 521 N.W.2d 471, 473 (Iowa App.1994). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7). Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties before us. *Montgomery*, 521 N.W.2d at 473. Upon our de novo review of the record, we affirm.

The legal principles governing modification actions are well established.

To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests

make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed for only the most cogent reasons.

*In re Marriage of Frederici,* 338 N.W.2d 156, 158 (Iowa 1983) (citing *In re Marriage of Mikelson,* 299 N.W.2d 670, 671 (Iowa 1980)).

■ Hollis Anderson was born August 4, 1987. His parents, Kelli Elliott and Tim Anderson were not married. Kelli was Hollis's primary caretaker, and Tim had no involvement with Hollis prior to the entry of a May 18, 1992, order approving a joint stipulation as to paternity, custody, support and visitation. Tim resides in Texas and Kelli lives in Iowa. After entry of the joint stipulation, Tim and Hollis began to have regular visitation over summer and holiday breaks.

Hollis had visitation with Tim in Texas from June 1993, until August 1993. Prior to the commencement of the 1993–94 school year, Kelli was without definite housing, transportation and employment, and she was uncertain as to where she would be living when school began. Tim and Kelli agreed it would be in Hollis's best interests for him to remain in Texas at the conclusion of his summer visit and begin first grade. Near the end of Hollis's first semester of school in Texas, the parties agreed Hollis should remain there for the remainder of the school year. Both parties agree this arrangement was temporary and was intended to avoid the disruption of having Hollis change schools in the middle of the year.

Following Hollis's holiday visits with Kelli during the 1993–94 school year, Tim became concerned about things Hollis said about the instability of Kelli's life and the homes and people to which Hollis was being exposed. Hollis had reported the presence of loaded guns in one of the homes in which Kelli spent a great deal of time. Hollis returned from his visits with Kelli with flea bites and a purportedly untreated dog bite. Hollis told of frequent moves while staying with his mother and his uncertainty as to where he would be staying from day-to-day. Hollis also recounted two incidents in which he had awakened during the night and had gone to his mother's bed. On one occasion he found a strange man in bed with his mother, and this scared him. Another time he found a man in his mother's bed and his mother was gone.

Tim hired a private investigator who confirmed some of Tim's concerns. Tim moved to modify custody in June 1994. A hearing was held and on August 24, 1994, the district court modified custody to place Hollis in Tim's primary physical care.

The record reveals Kelli moved five different times between entry of the joint stipulation on May 18, 1992, and the time of the modification hearing. For a period of time her employment and transportation circumstances were unstable as well. Due to her move away from Grinnell, Kelli did not continue to have regular access to family and friends who had long provided her with assistance in raising Hollis.

Kelli visited and, for awhile, resided at her sister's residence. This home was occupied by a number of adults, some with criminal records and no visible means of support. Testimony from residents of the home indicated marijuana was used there, although allegedly not in Hollis's presence.

Tim's life in Texas has been marked by stability and consistency since entry of the joint stipulation. He and his wife provided Hollis with a secure home. Hollis's academic progress improved due to the efforts of Tim and his wife. Tim utilized the services of a therapist to ease Hollis's transition to a new home and school during the 1993–94 school year. Evidence offered at the dissolution hearing indicated Hollis had adjusted well to his father's home in Texas and was happy there.

The district court found both Kelli and Tim love Hollis and want what is best for him.

The court praised both parents for their positive ability to communicate about Hollis's welfare. The district court found the long-term best interests of Hollis would be best served by placing custody with Tim, as Tim had demonstrated an ability to minister more effectively to Hollis's interests and needs. In contrast, the district court found some of the moves made by Kelli since May 1992 were clearly not in Hollis's best interests.

We find there has been a material and substantial change in circumstances. Since entry of the joint stipulation Kelli has had something of a nomadic existence. Her frequent moves and instability prevented her from providing Hollis with a stable home and decreased her contact with adults who had been instrumental in helping her raise Hollis. Kelli's moves had a negative impact on Hollis as reflected in his comments about the insta-bility and uncertainty which surrounded his visits to see her.

Kelli's decisions were not always in her son's best interests. Tim has demonstrated an ability to minister more effectively to Hollis's needs. While the decision to allow Hollis to remain in Texas after his 1993 summer visitation was temporary, the subsequent circumstances surrounding Kelli's moves warrant modification of custody. We affirm the district court's decision in its entirety.

**AFFIRMED.**