Frank DALE, Appellee,

v.

Sashena PEARSON n/k/a Sashena
Horman, Appellant.

No. 95–1571.

Court of Appeals of Iowa.

Aug. 30, 1996.

John F. Sprole and Amy L. Walsh of the Law Office of John F. Sprole, Des Moines, for appellant.

Harlan M. Hockett, Des Moines, for appellee.

Heard by CADY, P.J., and HUITINK and VOGEL, JJ.

CADY, Presiding Judge.

Sashena Horman appeals a district court order modifying the custodial terms of a prior paternity order. We affirm with modification.

Sashena Horman and Frank Dale began living together after Sashena became pregnant. Their child, Alisha, was born August 10, 1990. The couple separated in early 1992 and ended their relationship.

In November 1992 the district court entered an order establishing paternity, custody, support, and visitation. The court granted Sashena and Frank joint custody of Alisha, with primary physical care to Sashena.

Frank filed a petition to modify physical care of Alisha in August 1994, after Sashena began plans to move to Texas. Sashena was also involved in a relationship with James Horman, which Frank alleged was detrimen-tal to Alisha. Problems with visitation also occurred.

At the modification hearing in March 1995, testimony disclosed Sashena and James married in September 1994 and moved to Dallas, Texas in November 1994. James was employed by Armstrong Tire Company in Des Moines but went on strike with other workers in July 1994.

James and Sashena decided to move to Texas because James believed the job market in Dallas was stronger than Des Moines. James' parents also lived in Dallas. James thought he had a job arranged in Dallas as a private security guard, but after the move, learned the position was not available. He eventually found work installing security systems. Sashena also secured employment after moving to Texas. James and Sashena live in a two-bedroom home located next to the home of James' parents.

Frank exercised regular visitation with Alisha prior to the move to Texas, including alternating weekends. He completed two parenting classes and volunteered on numerous occasions at Alisha's day care center. Frank's family was also active in Alisha's life.

A custody evaluation was conducted prior to the hearing. The evaluator felt James was controlling and not a positive influence on Alisha. He recommended Alisha remain in Iowa and primary care be changed, if necessary, to ensure Alisha was not removed to Texas.

The district court modified custody. It found a substantial change in circumstances to warrant the modification based on Sashena's move to Texas and her marriage to James. It concluded both circumstances were deleterious to Alisha and her best interest would be served by awarding custody to Frank.

Sashena appeals. She claims her marriage and change of residence do not amount to a substantial change in circumstances to support a modification of custody. She also claims a change in custody was not warranted because the new circumstances did not negatively impact Alisha, and Frank failed to demonstrate a superior ability to parent Alisha. Additionally, Sashena claims the trial

court erred in awarding sole custody of Alisha and in establishing the visitation schedule.

### I. Standard of Review

■ We review the record de novo in a proceeding to modify the custodial provisions of a decree for dissolution of marriage. *In re Marriage of Zabecki,* 389 N.W.2d 396, 398 (Iowa 1986). At the same time, we recognize the virtues inherent in listening to and observing the parties and witnesses. *Id.* Consequently, we give weight to the findings of the trial court, although they are not binding. *Id. See also* Iowa R.App.P. 14(f)(7).

### II. Modification of Custody

■ Courts are empowered to modify the custodial terms of a dissolution decree only when there has been a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the children. *In re Marriage of Frederici,* 338 N.W.2d 156, 158 (Iowa 1983). Additionally, the parent seeking custody must prove an ability to minister more effectively to the children's well-being. *Id.* This strict standard is premised on the principle that once custody of children has been determined, it should be disturbed only for the most cogent reasons. *In re Petition of Anderson,* 530 N.W.2d 741, 741–42 (Iowa App.1995). Moreover, as in all cases involving the question of custody, our first consideration in proceedings to modify custody is the best interest of the children. *In re Marriage of Junkins,* 240 N.W.2d 667, 668 (Iowa 1976).

■ Remarriage itself does not constitute a material and substantial change in circumstances to support a change in custody. *In re Marriage of Dethrow,* 357 N.W.2d 44, 46 (Iowa App.1984). However, a substantial change may be found when the circumstances surrounding remarriage adversely impact the best interests of the child. *See Junkins,* 240 N.W.2d at 668 (strained relationships between child and step-father). The point when the circumstances surrounding remarriage will support a change in custody must necessarily depend on the facts of each case. *In re Marriage of Brown,* 247 N.W.2d 2, 4 (Iowa 1976).

■ Similarly, a change in residence by the custodial parent following the original decree, even out-of-state, does not itself justify a change in custody. *See In re Marriage of Day,* 314 N.W.2d 416, 421 (Iowa 1982). We live in a highly mobile society, and a move by one of the parties is not so unusual or substantial as to support a change in custody. *See id.* However, a change in residence involving a substantial distance can present significant obstacles to regular and active visitation by the noncustodial parent. It can frustrate an important underlying goal that children be assured the opportunity for maximum continuing physical and emotional contact by both parents following their parent's divorce. *In re Marriage of Ruden,* 509 N.W.2d 494, 496 (Iowa App.1993). Thus, the particular circumstances surrounding a change in residence may ultimately support a change in custody.

■ Our appellate decisions which have previously addressed the issue of a change in residence as a ground for modification generally focus on the motivation behind the move, as well as the overall impact of the move on the children. *See Frederici,* 338 N.W.2d at 160 (move not motivated by desire to defeat father's visitation rights or undermine father's relationship with the children insufficient change to warrant change in custody); *In re Marriage of Smith,* 491 N.W.2d 538, 540–41 (Iowa App.1992) (no modification of custody where a move to another city to obtain promotion, coupled with insufficient evidence to show move substantially affected children's best interest). In some instances, the benefits to the custodial parent may justify the move, especially when the custodial parent has been an alert, effective caretaker. On the other hand, a change in residence may serve as a basis for a change in custody if the reasons for moving the children and the quality of the new environment do not outweigh the adverse impact of the move on the children, including the adverse impact of disrupting the regular visitation schedule. A material change of circumstances affecting

the welfare of the children may be found when the visitation arrangement established by the original decree is disrupted, and access by one parent to the children is significantly limited without good and compelling reasons. *See In re Marriage of Quirk–Edwards,* 509 N.W.2d 476, 480 (Iowa 1993) (unjustified denial of visitation can provide adequate grounds for change in custody).

In this case, the reasons for moving Alisha to Texas did not justify the disruption to the regular visitation. Frank was an active and positive influence in Alisha's life. James and Sashena did not have employment secured at the time of the move, nor were they pursuing career advancements or other promising opportunities. *See Smith,* 491 N.W.2d at 540–41. When Jim arrived in Texas he learned the job he thought he had was not available, and the employment he finally secured paid significantly less than his earnings in Des Moines prior to the voluntary strike. Under the circumstances the move by James and Sashena showed no consideration for the overall welfare of Alisha and her relationship with Frank.

Sashena argues any modification of custody based on a change in residence by the custodial parent would serve only to punish a parent for moving because the child will still be separated from the visited parent. We acknowledge a change of custody does not remedy the disruption on the visitation. It only changes the parent who receives the limited visitation. Our objective in deciding the question of changing custody, however, is not to punish one parent. *Hagen v. Hagen,* 226 N.W.2d 13, 15 (Iowa 1975). Our goal is to protect the best interests of the child. The change in residence only establishes one step toward modification. Custody is ultimately changed only if it is in the child's best interest and the parent seeking the change is better able to minister to the child's well-being. *Frederici,* 338 N.W.2d at 158.

We conclude the circumstances surrounding the change in residence in this case satisfied the requirement of a material and substantial change in circumstances which relates to the welfare of the child. We also conclude the change is more or less perma-

nent. Most importantly, it would be in the best interests of Alisha to designate Frank as the primary caretaker. In making this decision, we are guided by the same factors for making child custody decisions. *In re Marriage of Hubbard,* 315 N.W.2d 75, 79 (Iowa 1982). Abundant evidence exists supporting Frank's superior parenting ability. He completed courses on parenting and has consistently demonstrated his parenting skills while regularly exercising visitation. Frank also has the support of his family. We also give weight to the opinion expressed by the expert child custody evaluator. *See Nicolou v. Clements,* 516 N.W.2d 905, 909 (Iowa App. 1994). Additionally, we share the concerns expressed about James, particularly as to how they could adversely impact Alisha. In addition to being controlling, James has a temper and has been untruthful. He has also engaged in assaultive and threatening behavior as a means of dealing with others.

### III. Remaining Issues

We have considered the remaining issues raised by Sashena. We agree the district court should have awarded joint custody. Accordingly we modify the order to grant Frank and Sashena joint custody of Alisha, with primary care to Frank. We affirm the visitation terms, as well as the other terms of the district court order.

**AFFIRMED AS MODIFIED.**