**IN THE COURT OF APPEALS OF IOWA**

No. 14-0483
Filed February 11, 2015

**Upon the Petition of**
**JEREMIAH THOMPSON,**
        Petitioner-Appellant,

**And Concerning**
**AMY ELSBURY,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Tama County, Marsha M.

Beckelman, Judge.


        A father appeals the district court's decision awarding physical care of the

children to the mother.  **AFFIRMED.**


        Barry S. Kaplan of Kaplan & Frese, L.L.P., Marshalltown, for appellant.

        Amy L. Van Wechel of Mossman & Mossman, L.L.P., Vinton, for appellee.


        Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, P.J.**

Jeremiah Thompson appeals the district court's ruling placing physical care of the parties' two children with Amy Elsbury. Jeremiah claims it is in the best interest of the children to be placed with him in light of Amy's unilateral move to Illinois and the recommendations of the child custody evaluator.

**I. Background Facts and Proceedings.**

The parties had an on-again/off-again relationship over the course of approximately nine years, during which two children were born: one in 2001 and one in 2005. The parties were never married, and the children primarily resided with Amy when the parties lived apart. They managed to work out custody and visitation arrangements even after they finally dissolved their relationship in 2008. However, in 2011 Amy moved with her then boyfriend to western Illinois, approximately three hours away from her previous home, taking the children with her, and Jeremiah filed a petition for custody.

During the proceedings, Jeremiah requested, and the court granted, a custody evaluation. After interviewing the parties and the children, the custody evaluator recommended physical care of the children be placed with Jeremiah "based on the strongly demonstrated concern that he is the parent who is most likely to seek to maintain a reliable coparenting relationship and ensure ongoing contact between the children and both parents." The custody evaluator was particularly concerned with Amy's decision to move to Illinois with little to no notice to Jeremiah and her refusal to allow Jeremiah to see the children for one month after the move.

The case proceeded to trial in July of 2012. The court heard from both parties, the child custody evaluator, and friends and family of the parties. In the court's January 2014 ruling, the court awarded physical care of the parties' children to Amy with visitation to Jeremiah including every other weekend, alternating holidays, alternating weeks in the summer, and one evening a week or one additional visit during the day on a Saturday in Illinois.

## II. Scope and Standard of Review.

Our review of this case is de novo because it was heard in equity in the district court. *See* Iowa R. App. P. 6.907. "We give weight to the findings of the district court, especially to the extent credibility determinations are involved." *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007).

## III. Physical Care.

This case involves the initial physical-care determination involving these children as there has been no prior court decree. *See McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010) (noting that where there has been no prior custody order, we treat the action as an initial custody determination rather than a modification proceeding despite a longstanding custodial arrangement between the parties). However, we do consider the previous pattern of caregiving as an important factor in making the initial custody determination. *Id.*; *see also Hansen*, 733 N.W.2d at 696-700 (discussing approximation factor). We are

guided by the factors listed in Iowa Code section 598.41 (2011)[1] as well as the factors enumerated in *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974),[2] in making the determination. *McKee*, 785 N.W.2d at 737. Our objective

---

[1] The statutory factors include:

> a. Whether each parent would be a suitable custodian for the child.
> b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.
> c. Whether the parents can communicate with each other regarding the child's needs.
> d. Whether both parents have actively cared for the child before and since the separation.
> e. Whether each parent can support the other parent's relationship with the child.
> f. Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.
> g. Whether one or both the parents agree or are opposed to joint custody.
> h. The geographic proximity of the parents.
> i. Whether the safety of the child, other children, or the other parent will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation.
> j. Whether a history of domestic abuse, as defined in section 236.2, exists. . . .
> k. Whether a parent has allowed a person custody or control of, or unsupervised access to a child after knowing the person is required to register or is on the sex offender registry as a sex offender under chapter 692A.

Iowa Code § 598.41(3).

[2] The *Winter* factors include:

> 1. The characteristics of each child, including age, maturity, mental and physical health.
> 2. The emotional, social, moral, material, and educational needs of the child.
> 3. The characteristics of each parent, including age, character, stability, mental and physical health.
> 4. The capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child.
> 5. The interpersonal relationship between the child and each parent.
> 6. The interpersonal relationship between the child and its siblings.

is to place the children in an environment most likely to bring them to healthy mental, physical, and social maturity. *Id.*

Jeremiah claims the court should have placed the children in his physical care in light of Amy's move to western Illinois. He cites the case of *Dale v. Pearson*, 555 N.W.2d 243 (Iowa Ct. App. 1996), for support. In *Dale*, a father sought to modify the physical-care provisions of a previous custodial order when the mother planned to move with the child to Texas. 555 N.W.2d at 244. The district court modified the physical-care arrangement, and our court affirmed that decision finding the reasons for the move did not justify the disruption to the regular visitation schedule that had been established and there were also concerns regarding the mother's new husband. *Id.* at 246. Our court stated,

> [A] change in residence involving a substantial distance can present significant obstacles to regular and active visitation by the noncustodial parent. It can frustrate an important underlying goal that children be assured the opportunity for maximum continuing physical and emotional contact by both parents following their parent's divorce.

---

7. The effect on the child of continuing or disrupting an existing custodial status.
8. The nature of each proposed environment, including its stability and wholesomeness.
9. The preference of the child, if the child is of sufficient age and maturity.
10. The report and recommendation of the attorney for the child or other independent investigator.
11. Available alternatives.
12. Any other relevant matter the evidence in a particular case may disclose.

223 N.W.2d at 166–67.

*Id.* at 245. However, each family situation is unique, and we must base our decision not on precedent, which has little value in family law cases, but on the particular circumstance of each case. *McKee*, 785 N.W.2d at 737.

Here, Amy did not move from Iowa to Texas but from eastern Iowa to western Illinois. The distance between the parties after the move was approximately three hours. Despite the distance, Jeremiah was still able to exercise "regular and active" visitation time with the children. *See Dale*, 555 N.W.2d at 245. There are no concerns with the children living with Amy's new significant other, as there was in *Dale.* In addition, Amy testified the children have improved their academic performance as a result of the move to a new school. *See id.* (noting the court considers the overall impact of the move on the children when determining whether a move justifies a modification of physical care).

Jeremiah also claims that Amy's actions in preventing him from seeing the children for a month after the move justifies placing the children in his physical care. He claims this denial demonstrated her unwillingness to foster a relationship between him and the children. Amy testified the reason she did not let the children see Jeremiah for a month after the move was because he threatened he would not return the children to her if he were to get them. While Jeremiah denied making this statement at trial, the district court concluded "the more believable evidence leads to the conclusion that he most likely did make such a threat." *See In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) ("Generally, we give considerable deference to the district court's

credibility determinations because the court has a firsthand opportunity to hear the evidence and view the witnesses."). In addition, Amy has never interfered with Jeremiah's ability to speak with the children every night over the telephone, either immediately after the move to Illinois or since.

Finally, Jeremiah claims the district court should have given more weight to the recommendations of the child custody evaluator, who recommended physical care be placed with Jeremiah. The district court considered the custody evaluator's recommendation at length and disagreed with the evaluator's conclusion that Amy would again prevent contact between Jeremiah and the children. The court made this conclusion based on its observations of Amy and the believability of her testimony. The court criticized the evaluator's failure to address the allegations of domestic abuse between Amy and Jeremiah and concluded the evaluator at times displayed a bias toward Jeremiah. *See In re Marriage of Rebouche*, 587 N.W.2d 795, 799 (Iowa Ct. App. 1998) (rejecting a custody evaluation recommendation where it was found the evaluation was not performed in an objective format).

The custody evaluator in this case noted "both Amy and Jeremiah are capable of doing an excellent job of parenting." The evaluator went on to conclude, "There is no evidence that either would fail to provide a safe and adequate home for the children and meet their emotional and physical needs." The children had "a strong preference for living with their mother and remain strongly affiliated with her emotionally."

Historically, Amy has been the primary caregiver for the children. The children have both had medical issues since birth, and Amy has been the parent to make sure the children attend all appointments and follow the recommendations of the medical professionals. She has seen to their daily needs and is actively involved in their education. While Jeremiah is clearly an attentive and caring father, we agree with the district court's decision that physical care should remain with Amy subject to Jeremiah's liberal visitation rights. We therefore affirm the district court's physical-care ruling.

**AFFIRMED.**