**IN THE COURT OF APPEALS OF IOWA**

No. 14-1466
Filed May 20, 2015

**JASON MICHAEL CRAWFORD,**
        Plaintiff-Appellee,

**vs.**

**ELIZABETH DIANE ROSEN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Joel W. Barrows, Judge.

        A mother appeals the district court's modification of the physical care provisions of the paternity order affecting the parties' minor child.  **AFFIRMED.**

        Stephen W. Newport of Newport & Newport, P.L.C., Bettendorf, for appellant.

        Paul Aiken of Aiken, Aiken & Sharpe, P.C., Davenport, for appellee.

        Heard by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, J.**

Elizabeth Rosen appeals the court's grant of physical care of the parties' minor daughter to Jason Crawford. Elizabeth claims the court should have placed the child in her physical care because she can provide superior care for the child. She also appeals the district court's decision to order her to pay Jason's trial attorney fees. Jason defends the district court's decision and requests an award of appellate attorney fees. Because we conclude the best interests of the child support keeping the child in Iowa in Jason's physical care and we find no abuse of discretion in the court's award of trial attorney fees, we affirm the district court's decision. We award Jason $1000 in appellate attorney fees.

**I. Background Facts and Proceedings.**

Jason and Elizabeth were never married but are the parents of a daughter, who was nine years old at the time of the modification trial. In 2012, Jason filed a petition to establish paternity, custody, and visitation, and sought to prevent Elizabeth from leaving the state with the child. At that time, Elizabeth wanted to move with the child to North Carolina. The parties agreed to temporary joint legal custody and joint physical care during the pendency of the paternity action, alternating weekly care on Sundays. However, a hearing was later held regarding the temporary matters. Elizabeth argued she should receive physical care and the child should be permitted to move out of state with her because the neighborhood Jason lived in was unsafe, the child did not attend a high quality school, and the child is cared for by the paternal grandmother and

aunt, not Jason. She also made claims of domestic abuse against Jason. The court did not find her testimony credible, noting she "was evasive and inconsistent in her testimony and admitted to lying under oath in this hearing." Elizabeth failed to substantiate her allegations of domestic abuse, and the court noted she admitted to "being violent with her live-in girlfriend where the child was injured." Because the claims of domestic violence were unsubstantiated, the court did not find grounds to invoke the domestic violence presumption toward custodial care. Instead, the court ordered that the joint legal custody and joint physical care arrangement should continue pending a full hearing. It was also ordered that the child should not be moved from the state.

The trial on the petition occurred on July 31, 2013. In the court's ruling filed August 30, 2013, the court noted Elizabeth wanted to move the child to North Carolina for a few years and then to New York City. The court was concerned that the frequent moves proposed by Elizabeth would be detrimental to the child who had extended family in the Quad Cities and always lived and attended school in Davenport. The court also noted the difficulty Jason would have maintaining a relationship with the child if the child was moved out of state. The court ultimately found it was not in the child's best interests to move from the area, it continued the temporary order of joint legal custody and joint physical care alternating care on Sundays, ordered Jason to pay child support, and ordered "neither party may move the child out of Iowa."[1]

---

[1] The court found that while Jason had been arrested for domestic violence for assaulting Elizabeth in 2001 in Cedar Rapids, Jason had never been convicted. Jason also had been arrested for operating while intoxicated and did not have a driver's

Roughly two months after this order was filed, Elizabeth moved to New Jersey with her fiancé. She did so to continue her education in fashion development and marketing and was about to start an internship with a fashion company at the time of the modification hearing.[2] She expected the internship to turn into full-time employment after she graduated from the program. When she left the state, she anticipated her father would be able to take care of the child on her weeks, but her father changed his mind, and the child was left with Jason.[3] Elizabeth believed she had no employment options in fashion product development in the Davenport area and needed to move to provide a better neighborhood and lifestyle for herself and the child.

Elizabeth filed a petition to modify the custody order on January 22, 2014. She also filed an application for an order to show cause, alleging Jason had denied her visitation rights, was not paying child support, and had not provided

license. With respect to Elizabeth, the court again noted the domestic dispute a few years earlier involving someone besides Jason while the child was present. Elizabeth likewise was convicted of operating while intoxicated in the past but had since obtained her driver's license. The court also noted Elizabeth had previously advertised her services online as an escort with suggestive pictures, though she asserted she had stopped providing that service and had removed her advertisements.

[2] We note Elizabeth is obtaining her degree online and the move to New Jersey did not change that fact. However, after she moved she was able to obtain an internship with a company located in New York City. Elizabeth's commute to the internship from her home in New Jersey is approximately one hour each way.

[3] Elizabeth provided no advance notice to Jason regarding her move to New Jersey. She asserted that she could not have discussed the move with Jason at that time as there was a no-contact order that was in effect. We note there was a protective order between the parties that was entered by stipulation on April 10, 2013, and remained in effect for one year. There is no information in the record to indicate what precipitated or justified the imposition of the protective order. The protective order stated custody and visitation would be as provided in the custody case, which at the time the protective order was entered was joint physical care alternating on a weekly basis. Despite this no-contact order, the parties were still able to manage the joint physical care arrangement until Elizabeth left town in October 2013. In addition, the no-contact order did not prohibit communication through legal counsel.

health insurance coverage for the child. During the pendency of the modification petition, the parties agreed to certain dates that Elizabeth would spend with the child in Davenport and dates the child was to spend in New Jersey with Elizabeth, including a substantial part of the summer vacation. Jason's child support and medical support obligations were suspended and a temporary child support order was also entered requiring Elizabeth to pay child support to Jason.

The modification action went to hearing on August 7, 2014. During the trial, Jason testified he had just started a job through a staffing agency. He expected to graduate shortly with his bachelor's degree in music production and audio engineering from an online university and hoped to find a job in that field in the local area.

At the time of the modification trial, Elizabeth lived with her fiancé in New Jersey in a long-term rental home in a residential neighborhood with a pool, clubhouse, and playground. The child had spent several weeks with Elizabeth over the summer attending summer day camps in the neighborhood. Jason lived in a commercial building that had been converted into a two-bedroom apartment. Jason's parents lived in the same building in a separate three-bedroom apartment, and the child saw Jason's parents every day. While Elizabeth testified the area Jason lived in was unsafe, both Jason and his mother testified the area was safe.

The child's school records indicated that while she met or exceeded expectations for her grade level, she had been absent almost seventeen days during the 2013-2014 school year and had been tardy thirteen times. While

Jason initially blamed the absences on times the child was with Elizabeth, these school attendance problems occurred after Elizabeth moved to New Jersey. In addition, Jason's Facebook status for November 4 indicated that Jason kept the child home from school so the two could go shopping and hang out. Jason clarified at the hearing that there was a snowstorm that day and school was let out two hours early, so he felt the child did not have to go to school because of the weather. He also stated that they did not go shopping that day but stayed home and went shopping the following weekend.

After hearing testimony from Elizabeth, Jason, and Jason's mother, the court issued its decision on the petition to modify. The court found a substantial change in circumstances due to Elizabeth's move to New Jersey. The court noted that while this move may have been done in part to provide a better life for Elizabeth and the child, the court found a considerable portion of the motivation for the move was "Elizabeth's own selfish interests." The court stated "Elizabeth certainly could pursue an education in a different area and a career closer to the town in which her daughter grew up." The court concluded:

> It seems to the Court that it would be unduly disruptive to remove [the child] from the only environment she has known and move her to New Jersey, where Elizabeth has few relatives with whom [the child] has had any significant contact. There is nothing to indicate to the Court that [the child's] present circumstances are of any great concern. She is doing well in school and appears to be a healthy, happy, well-adjusted girl. While her absences from school are a matter of concern, her performance there alleviates much of the Court's concern. On balance, it appears that Jason has done a good job with [the child] as a single parent and that [the child] has done well under his care. Certainly, what testimony that was provided from witnesses other than Elizabeth indicated a father who is involved in his daughter's life and does his best by her while trying to establish a better life for both of them. Given all of the

above, the Court believes that it is in [the child's] best interest if primary physical care is awarded to Jason.

The court went on to order Elizabeth to pay $3587.50 for Jason's trial attorney's fees. From this order, Elizabeth appeals.

## II. Scope and Standard of Review.

Because a proceeding to modify the custodial provisions of a decree is an equitable proceeding, we review the district court's decision de novo. *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). We give weight to the district court's factual findings, especially credibility determinations, but we are not bound by them. *Id*.

## III. Modification of Physical Care.

Courts can modify the physical care provisions of a prior decree only when there has been "a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the child." *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). While the relocation of one parent does not itself justify a change in physical care, a move involving a substantial distance can present obstacles to regular visitation and can frustrate the underlying goal that children be assured the opportunity for maximum continuing and emotional contact by both parents. *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996). Here, there is no dispute between the parties that Elizabeth's move to New Jersey satisfies the requirement for a substantial change in circumstance. The joint physical care arrangement was no longer

workable considering the substantial distance between the parties and the child's need to attend school.

Where the prior arrangement provides for joint physical care, both parents have been found suitable to be physical care parents. *Melchiori*, 644 N.W.2d at 369. However, where the joint physical care arrangement is no longer workable, the court must determine which parent would offer the child superior care. *Id.* It is important to place the child in the environment that will advance the child's mental and physical health and emotional maturity. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Our primary concern is the best interests of the child. *Dale*, 555 N.W.2d at 245.

Elizabeth claims the child should be placed with her because she will place greater emphasis on the child's education, her home is in a safer environment, and she will better monitor the child's social media presence.[4] It was concerning to the district court, as it is concerning to this court, that the child has missed a substantial amount of school under Jason's watch. Jason was unable to provide the court with any reasonable explanation for the absences. He first claimed the absences occurred when the child was with Elizabeth but the absences did not start until Elizabeth had moved to New Jersey. Next, he claimed the child was ill, and finally, he claimed the weather impacted her

---

[4] Elizabeth entered into evidence the Facebook pages of Jason and a friend of Jason's, which contained sexually suggestive material and references to drug use. Both of these pages were accessible to the child through the child's Facebook page. The district court found the material not appropriate for a child but "would not classify the material as pornography." Jason testified that many of the references on Facebook were taken out of context, but he would be removing the child's Facebook page after the hearing as he realized the material on Facebook was adult and the nine-year-old child should not have access to it.

attendance. However, the child's absences from school do not appear to have had an impact on the child's performance at this time as the child had met or exceeded expectations in every subject.

While Elizabeth claimed Jason's home was not in a safe neighborhood, there was no evidence admitted that established the child's current neighborhood was unsafe, and Elizabeth had made this same claim during the initial paternity action a year earlier when the court had ordered joint physical care. At the hearing in this modification proceeding, both Jason and his mother testified the area is safe and the child lives about three blocks from her school.

Elizabeth claims the district court unfairly penalized her for moving to New Jersey, calling the move "selfish" when the move was to provide a better life for herself and the child. She specifically asserts the court's comments reflect some kind of gender bias. In asserting the move was for selfish reasons, the court noted Elizabeth had been told by the court in the initial custody action it was in the child's best interest to stay in Iowa and neither party was to remove the child from the state. Despite this clear directive from the court, approximately two months later, Elizabeth moved half-way across the country to pursue an education and a career that had a very specific geographic requirement. The court noted Elizabeth, knowing the court had found it to be the child's best interests to stay in Iowa, could have chosen an education in a different industry and found a career that could have been pursued in a town closer to her daughter. Elizabeth's unilateral decision to move to New Jersey alone does not justify uprooting the child from the community she has known her entire life and

from her father and her extended family. We detect no gender bias in the court's order.

Finally, Elizabeth claims she was historically the primary caregiver for the child. However, we note the most recent court order provided for joint physical care, and when Elizabeth left the state to move to New Jersey, she left the child with Jason on a full-time basis two months after the initial custody determination. Thus, it has been mainly Jason and his family that have provided for the child's daily needs in the year prior to the modification action.

We agree with the district court's conclusion that it is in the child's best interests to remain in Iowa with Jason. We therefore affirm the modification decision placing the child in Jason's physical care and granting Elizabeth visitation as outlined in the parties' stipulation.[5]

## IV. Attorney Fees.

Elizabeth also challenges the district court's decision to order her to pay Jason's trial attorney fees in the amount of $3587.50. She claims neither party was the "prevailing party" because each won on some issues and claims the court failed to base the award of attorney fees on the proper statute. She argues neither party should have been awarded attorney fees.

---

[5] At the conclusion of the modification hearing, the parties provided the court with a stipulated visitation and holiday schedule that outlined the visitation time the parties would agree to irrespective of who was awarded physical care. The noncustodial parent would be entitled to visitation with the child when that parent came to visit for up to seven days so long as written notice was provided a week in advance. The custodial parent would receive the first ten days of the summer vacation. Thereafter, the child would spend the remainder of the summer vacation with the noncustodial parent, and the child would return to the custodial parent one week prior to the beginning of the school year. The parties would alternate spring break, Elizabeth would be entitled to Thanksgiving break, and the parties would divide the winter break.

In ordering Elizabeth to pay Jason's attorney fees, the court stated:

> As noted above, Elizabeth created this situation with her move to New Jersey, which the Court believes was done, in part, for selfish reasons. Jason was left to provide de facto primary physical care for [the child] because of this. Furthermore, Elizabeth made this move despite the language in the ruling on petition for custody filed on August 30, 2013. Because of this, the Court feels it is appropriate to award attorney's fees to Jason. Petitioner's Exhibit 2 shows attorney's fees in the amount of $3,587.50. Elizabeth shall reimburse Jason for those attorney's fees.

Iowa Code section 600B.26 provides: "In a proceeding to determine custody or visitation, or to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees." The court did not reference any particular code section in its order, so it is unclear how Elizabeth concludes the court failed to rely on the proper code section. Section 600B.26 does provide the prevailing party may be awarded attorney fees. Elizabeth petitioned to modify the physical care provision of the paternity order asking that the child be placed in her care. The physical care provision was modified but the child was placed in Jason's physical care. We conclude Jason was the prevailing party.

An award of trial attorney fees rests in the district court's discretion, and we will overturn that order only for an abuse of discretion. *Markey v. Carney*, 705 N.W.2d 13, 25 (Iowa 2005). We find no abuse in the district court's order.

Jason also makes a request for appellate attorney fees. The award of appellate attorney fees rests in our discretion, and we determine whether such an award is warranted based on "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was

obligated to defend the trial court's decision on appeal." *Id.* at 26. Because Jason was required to defend the district court's decision on appeal, we award him $1000 in appellate attorney fees.

Costs on appeal are assessed to Elizabeth.

**AFFIRMED.**