**IN THE COURT OF APPEALS OF IOWA**

No. 14-1772
Filed August 5, 2015

**IN RE THE MARRIAGE OF MARK E. BRUS
AND ARELI BRUS**

**Upon the Petition of
MARK E. BRUS,**
      Petitioner-Appellant,

**And Concerning
ARELI BRUS,**
      Respondent-Appellee.

_____

Appeal from the Iowa District Court for Buena Vista County, Don E. Courtney, Judge.

The father appeals from the decree modifying physical care of the parties' child. **REVERSED AND REMANDED.**

David P. Jennett of David Jennett, P.C., Storm Lake, for appellant.

M.W. Miller Jr. of Miller, Miller, Miller, P.C., Cherokee, for appellee.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

Mark Brus appeals from the modification decree, which changed physical care of K.B. from Mark to his former spouse Areli Brus. Mark contends Areli failed to prove that there had been a substantial and material change of circumstances since the entry of the parties' dissolution decree, that she would be the superior care provider, and that a change in physical care would be in the child's best interests.

I.

Mark and Areli Brus married in 2002 and separated in 2009. Their daughter K.B. was born in 2003. Mark petitioned to dissolve their marriage in January 2010. Following a hearing on temporary matters in February, the court issued its ruling on temporary matters, finding "[b]oth parties have performed the functions of primary caretakers," and "it is in the best interest of the minor child that the parties have joint legal custody; that primary physical care be placed with Mark and that Areli have visitation." In August, the parties stipulated to a dissolution decree providing joint legal custody of K.B., awarding Mark physical care of K.B., providing for "reasonable and liberal visitation with the minor child upon such terms as the parties shall agree," and ordering Areli to pay child support.

Both parties are employed full time. Mark normally works from 2:00 p.m. to 10:00 p.m. Areli normally works from 7:00 a.m. to 4:30 p.m. Mark has a three-bedroom home in rural Alta, Iowa. Areli lives in Storm Lake. She has a two-year-old child from another relationship. K.B. attends school in Storm Lake.

During the week, Mark takes K.B. to school in Storm Lake every morning. At the end of the school day, K.B. attends daycare after school until approximately 4:30 p.m. when Areli picks her up after work. K.B. stays with her mother through the evening until Mark picks up the child after work and takes her home. Mark usually arrives at Areli's house around 10:40 p.m. In the summer, Mark takes K.B. to daycare around noon. Areli picks up K.B. after work and has visitation through the remainder of the evening until Mark picks up K.B. after work. Mark works every third Sunday. When that day of work falls on a weekend in which K.B. is in his care, K.B. stays with Areli while Mark is at work.

In August 2012 Mark was arrested and charged with manufacturing methamphetamine. He received a deferred judgment and was discharged from his three-year probation after successfully completing the terms of probation in eighteen months. A child abuse assessment following Mark's arrest resulted in a founded report for denial of critical care and his placement on the child abuse registry. K.B. was removed from Mark's home after Mark's arrest, adjudicated a child in need of assistance ("CINA") in October, and initially placed with her paternal aunt, then later with her mother. In September 2013, K.B. was returned to Mark's care. The CINA case was closed in November.

In September 2013 Areli filed her application for modification of the stipulated decree, alleging a substantial change in circumstances (1) in that she had become the de facto primary caretaker of K.B. and (2) in that it was in K.B.'s best interest to reside primarily with her. The district court granted Areli's petition, concluding:

When the Decree was entered on August 27, 2010, the court awarded physical care to Mark. The court intended Mark to be the primary physical caretaker. The evidence convinces this court by a preponderance of the evidence that the child is with Areli the majority of the time and that she is the primary caretaker for the child and has been since the dissolution. This was not what the court contemplated.

. . . . It is this court's opinion that this schedule, whether it be during the school year or during the summer, is not in the best interest of a child 11 years old nor is this what the court contemplated when the decree awarded physical care to Mark.

The next question for the court is whether Areli has proven an ability to provide superior care? The court believes that the evidence reflects that she has proven the ability to provide superior care. The court has concluded that Areli has been the de facto primary physical caretaker for the child since the dissolution. She lives in Storm Lake where the child's school is located, she has family in Storm Lake and her home provides the child her own bedroom. The past winter was so cold that Mark had to have the child sleep with him in his bedroom in a separate bed. A modification of the court's decree allows the child to sleep uninterrupted from the time she goes to bed until she gets up to go to school. The court believes that Areli has and will continue to allow Mark maximum continuous physical and emotional contact with the child. Mark, when given the opportunity to allow Areli that opportunity, chose to have his sister have physical care of K.L.B. The court believes that this modification only confirms the de facto custody arrangement of the parties.

## II.

Our review is de novo. Iowa R. App. P. 6.907; *see In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g); *see In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).

## III.

Changing physical care of a child from one parent to another is one of the most significant modifications that can be undertaken in family law matters. *In re*

*Marriage of Hoffman*, ___ N.W.2d ___, ___, 2015 WL 2137550, at *5 (Iowa 2015); *see In re Marriage of Thielges*, 623 N.W.2d 232, 236 (Iowa Ct. App. 2000). The party requesting modification must first establish a substantial and material change in circumstances. *Hoffman*, ___ N.W.2d at ___. A substantial change in circumstances is one that is more or less permanent, not contemplated by the court when the decree was entered, and that affects the children's welfare. *See id.*; *see also In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983); *Thielges*, 623 N.W.2d at 238. After establishing a substantial change in circumstances, the party seeking modification must also establish the ability to minister more effectively to the needs of the children. *See Hoffman*, ___ N.W.2d at ___; *see also Frederici*, 338 N.W.2d at 158. This is a "heavy burden," and rightly so. *See Hoffman*, ___ N.W.2d at ___; *see also Thielges*, 623 N.W.2d at 235-37. To promote stability in children's lives, our courts have concluded that "once custody of children has been determined, it should be disturbed only for the most cogent reasons." *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996).

## A.

On de novo review, we conclude Areli failed to carry her heavy burden of establishing a substantial and material change in circumstances. There are two primary problems of proof. First, Areli failed to introduce evidence establishing the parties' care and visitation arrangements at and around the time of the dissolution decree. In the absence of evidence of the circumstances prior to the time of the dissolution decree, a party cannot establish a substantial and material

change in circumstances supporting modification. Second, while the district court found "the child is with Areli the majority of the time and that she is the primary caretaker for the child and has been since the dissolution," this is not supported by the evidence. The child is actually under Mark's physical care a greater percentage of the time than under Areli's care.

Another consideration militates in favor of concluding there has not been a substantial and material change in circumstances outside the contemplation of the decretal court. In the stipulated decree, the parties provided for Areli to have "reasonable and liberal visitation with the minor child *upon such terms as the parties shall agree*." (Emphasis added.) Iowa Code section 598.41(1) (2013) provides, in relevant part:

> The court, insofar as is reasonable and in the best interest of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, and which will encourage parents to share the rights and responsibilities of raising the child.

The original decree gave the parties the ability to work together to "assure the child the opportunity for the maximum continuing physical and emotional contact with both parents." While it is correct that Areli spends a significant amount of time caring for K.B. after school while Mark is at work, it is also certainly correct that Mark could have hired another caretaker to watch K.B. during this same period of time. Instead, Mark and Areli cooperated in K.B.'s best interest to give her the most time possible with both of her parents. Mark should not now be

punished by losing physical care of his child for granting Areli very liberal visitation with K.B. in accord with the stipulated decree.

We agree with the district court, generally, that there may be a point at which one parent has been the de facto physical caretaker for an extended period of time such that the decree should be modified to reflect that reality. That is not this case. In the typical de facto care claim, the parent granted physical care has abandoned the child to the care of the other parent for a long period of time. *See, e.g.*, *In re Marriage of Spears*, 529 N.W.2d 229, 229 (Iowa Ct. App. 1994) (granting modification where mother left the area); *In re Marriage of Scott*, 457N.W.2d 29, 32 (Iowa Ct. App. 1990) (granting modification where mother moved to another state and left daughter in father's care for two years); *In re Marriage of Green*, 417 N.W.2d 252, 252-53 (Iowa Ct. App. 1987) (granting modification where custodial mother moved 150 miles away and left children with the father for two years). This case is more analogous to *In re Marriage of Caldwell*, No. 06-1369, 2007 WL 912124, at *2 (Iowa Ct. App. Mar. 28, 2007). In *Caldwell*, the father had physical care of the children but granted the mother liberal visitation due to work schedules. *See Caldwell*, 2007 WL 912124, at *1. The mother argued there had been a de facto transfer of primary physical care. The court rejected the claim, concluding the father was merely granting more visitation to the mother than was required in the decree while also providing daily care for the children. *See id.* at *2. The same rationale applies here.

On de novo review, we also conclude Areli has not proved the ability to provide superior care to K.B. Areli has an apartment where K.B. has her own

bedroom. Mark has a home on an acreage where K.B. has her own bedroom. Areli has family nearby; so does Mark. Although Areli lives in Storm Lake where K.B. attends school, her work schedule does not permit her to take K.B. to school or pick her up from school. Mark lives just outside of Storm Lake and takes K.B. to school every day. We note there is no indication that Mark's arrest impacts his ability to provide care for the child. He demonstrated he was able to quickly turn his life around and learn from his mistake. He successfully discharged his probation in half the required time. The department of human services recommended that care of the child be returned to him. There is no evidence in this record supporting the conclusion that Areli can provide superior care.

Finally, on de novo review, we conclude that modification of the parties' decree is not in K.B.'s best interests. The district court concluded the parties' agreed-upon schedule was not in K.B.'s best interest, solely because she does not have the opportunity to sleep uninterrupted through the night. We note the current schedule allows for ample sleep and the disruption after Mark gets off work is de minimis. The parties' care arrangement has not affected K.B.'s schooling. Areli's friend testified K.B. was "doing good in school." The case worker who worked with K.B. during the CINA case testified concerning K.B.'s custody:

> I worked with this family for well over a year. KLB stated that she wanted to live back at her father's home. Mark meets every need of KLB. She is happy. She is healthy. I believe that Mark goes out of his way to co-parent with Areli. The first district court felt that Mark should have custody, and I would not see the point at this time, based on my interaction with the family, why that will change or why KLB would be uprooted and moved from one home to another.

We are unable to conclude the current care schedule has a negative effect on K.B.'s welfare or that a modification is in K.B.'s best interest.  *See Frederici*, 338 N.W.2d at 158.

IV.

For the foregoing reasons, we reverse the decision of the district court modifying the custody provisions of the parties' stipulated decree and remand for dismissal of Areli's application for modification.

**REVERSED AND REMANDED.**