**IN THE COURT OF APPEALS OF IOWA**

No. 22-1661
Filed October 11, 2023

**KORY M. FUERSTENBERG,**
    Plaintiff-Appellee,

**vs.**

**LEAH L. FRETTE,**
    Defendant-Appellant.

_____

    Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin,

Judge.


    A mother appeals a district court order declining to modify the joint physical

care arrangement for her daughter.  **AFFIRMED.**


    David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellant.

    Kory M. Fuerstenberg, Altoona, self-represented appellee.


    Considered by Tabor, P.J., Buller, J., and Mullins, S.J.*

    *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**TABOR, Presiding Judge.**

Leah Frette and Kory Fuerstenberg are the parents of seven-year-old A.F. Six years ago, our court modified their custody decree to award the parents joint physical care of their daughter. *Fuerstenberg v. Frette*, No. 16-1592, 2017 WL 1735906, at *4 (Iowa Ct. App. May 3, 2017). In 2021, Leah petitioned to modify that shared-care arrangement. The district court denied the modification because it found no significant change in circumstances. On appeal, Leah contends the conflict between her and Kory has become so intense that she should be granted primary care of A.F. Like the district court, we find Leah did not prove a significant change in circumstances since the last modification. Thus, we affirm.

## I. Facts and Prior Proceedings

Leah and Kory met through an online dating site. They have never been married. In 2015, Leah gave birth to A.F. Leah worked various jobs after A.F. was born but is now pursuing a degree from Des Moines Area Community College (DMACC). Kory has his associate in arts degree from DMACC. At the time of the original decree, he worked for the Iowa Department of Corrections. Since he left that job, he has done "freelance work" out of his home. The parties struggle to communicate with each other, but they text often about A.F. And both parents are actively involved in A.F.'s life.

Since the 2017 appeal, Leah and Kory have joint physical care of A.F.—alternating weeks and exchanging custody on Friday evenings. The parent who does not have physical care during the week may visit A.F. from 5:00 p.m. to 7:00 p.m. on Wednesdays. Leah and Kory also alternate holidays and are granted two uninterrupted weeks of time with A.F. in the summers.

Four years after the earlier appeal, Leah petitioned the district court for modification of this custody arrangement, requesting physical care of A.F. and visitation to Kory. The district court denied Leah's request. She appeals.[1]

## II. Standard of Review

The framework for modification of custody orders between unmarried parents is the same as that for dissolution decrees of married parents. *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988). And because these proceedings are in equity, we review these orders de novo. *Phillips v. Davis-Spurling*, 541 N.W.2d 846, 847 (Iowa 1995). Additionally, "we give weight to the findings of the trial court, although they are not binding." *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996).

## III. Analysis

Leah contends the conflict between her and Kory has escalated to the level required to modify their shared-care arrangement. Leah emphasizes that she and Kory have "been unable to communicate successfully for the benefit of their daughter," and that they "simply cannot cooperate." With this, Leah asks the court to grant her primary physical care of A.F.

Courts may modify the terms of a custody order only when there has been a substantial change in circumstances since the decree, not contemplated by the court when the decree was entered, that was more or less permanent, and that relates to the child's welfare. *Id.* The party seeking modification bears the burden

---

[1] Leah is represented by counsel on appeal. Kory filed his appellee's brief without benefit of counsel.

to show a substantial change has occurred. *In re Marriage of Leyda*, 355 N.W.2d 862, 865 (Iowa 1984).

Leah cites *Melchiori* and *Mayes* as cases in which courts have modified custody orders based on the parents' deteriorating relationship. *Melchiori v. Kooi*, 644 N.W.2d 365 (Iowa Ct. App. 2002); *Mayes v. Hagen*, No. 09-1068, 2010 WL 625050, at *4 (Iowa Ct. App. Feb. 24, 2010). Because of the nature of these proceedings, our determination is more fact dependent than precedent dependent. *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). But even if we look to precedent, in both *Melchiori* and *Mayes*, the parents agreed that the custodial arrangement was not working and they could not find common ground when it came to sharing *care. See Melchiori*, 644 N.W.2d at 368 ("The shared custody provisions agreed to by these parties and incorporated into the decree have not evolved as envisioned by either of the parties or the court. Both parents appear to agree joint physical care is not working."); *Mayes*, 2010 WL 625050, at *4 ("Both [parents] admitted communication between them is horrible.").

By contrast, Kory disagrees that he and Leah are not on the same page. He acknowledges "disagreements and communication issues" but claims they are "not new." And he points to their "general cooperation" as shown by "exchanging dates" and attending parent-teacher conferences together.

Further, the decision to modify an arrangement based on conflict hinges on whether the "discord between [the] parents" disrupts the child's life. *Melchiori*, 644 N.W.2d at 368. True, the record shows that Kory has been verbally abusive and called Leah hurtful names. But the record does not show that A.F. had been adversely affected by Kory's bad judgment. As the district court found, A.F. is "on-

track at school, has friends, and is generally happy." The parents are able to coordinate school drop off and pick up. Although A.F. has missed school, these were mostly sick days from contracting COVID-19.

When we considered the appropriateness of joint physical care in our 2017 ruling, the parents were having trouble with respectful communication. Their level of discord is no different today. We recognize that mutual respect and communication are important factors to consider in determining modification. *In re Marriage of Harris*, 877 N.W.2d 434, 441 (Iowa 2016). But in *Harris*, the parties' joint physical care had "not evolved as envisioned" from the beginning. Those parents were "unable to communicate civilly in person" and the "depth of their animosity toward each other" was "not lost on the children." *Id.*

This record is different. In 2017, we hoped that the parents could "set aside past disagreements" for A.F.'s sake, and they have proven they can—to some extent. Although Kory is still disrespectful toward Leah, which is disappointing, the parties are careful not to let this affect A.F. Leah mentions a couple of incidents where Kory did not respond to her inquiries when he had physical care of A.F. and when he took her on a trip without telling Leah. But we do not find this to be a pattern of behavior. Leah and Kory have spent time with A.F. together. And Leah talks to A.F. on the phone while she is in her father's physical care. We find no significant change in circumstances warranting modification of the parties' current custody arrangement.

Because we determine that the parties' acrimony does not rise to the level required to modify the custody order, we need not consider whether modification would be in L.F.'s best interests.[2]

Finally, Leah seeks to increase Kory's child support obligation but does not identify what material and substantial change in the parties' financial circumstances would justify that modification. *See In re Marriage of Smith*, 501 N.W.2d 558, 560 (Iowa Ct. App. 1993). Without that argument, we find the issue waived on appeal.

**AFFIRMED.**

---

[2] We do note that Leah has leveled several serious allegations that Kory has exposed A.F. to negative influences and unsafe situations. But like the district court, we find these claims were not substantiated in the record.