**IN THE COURT OF APPEALS OF IOWA**

No. 14-1483
Filed June 10, 2015


**JEFFREY A. MEYER,**
        Petitioner-Appellant,

**vs.**

**BRANDI R. HARRIS, n/k/a BRANDI R. NORBERT,**
        Respondent-Appellee.
_____


        Appeal from the Iowa District Court for Pottawattamie County, Timothy

O'Grady, Judge.


        Jeffrey Meyer appeals a district court order modifying a dissolution decree

to place physical care of the parties' children with Brandi Norbert.  **AFFIRMED.**



        Drew H. Kouris, Council Bluffs, for appellant.

        Stephen C. Ebke of Ebke Law Office, Council Bluffs, for appellee.



        Heard by Danilson C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

Jeffrey Meyer appeals a district court order modifying a dissolution decree to place physical care of the parties' children with Brandi Harris, n/k/a Brandi Norbert. Brandi requests appellate attorney fees. We affirm.

*I.      Background Facts and Proceedings*

Jeffrey and Brandi are the parents of R.A.M., born in 1999, and C.M., born in 1997. Jeffrey and Brandi divorced in 2003. The family lived in Maine at that time. The parties exchanged physical care of the children on a weekly basis until 2007.

In 2007, Jeffrey moved to Iowa with the children. Brandi testified Jeffrey gave no notice of the move and she had to search for the children. Jeffrey testified he gave Brandi his Iowa address with two weeks' notice. When Brandi located the children in Iowa, she removed them back to Maine without notice to Jeffrey. Jeffrey notified police, and an Amber Alert was issued for the children. When police located Brandi in Maine, the children were taken into custody and returned to Jeffrey.

Meanwhile, Brandi filed a "motion to amend divorce judgment" in Maine. A hearing on the motion was held in May 2009. Brandi was living in the state of Washington; Jeffrey and the children were living in Iowa. Brandi had not seen the children in nearly two years. The Maine court entered an order providing that the children would remain in Jeffrey's physical care and Iowa would be the children's home state.[1] The court ordered that Brandi have visitation with the

---

[1] Specifically, the court's order stated, "[P]ursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, Maine has lost exclusive, continuing jurisdiction over

children in Washington for the month of July 2009, and for a week during the children's Christmas vacation each year. Beginning in 2010, Brandi was to have visitation with the children for the months of June and July each summer. The court's order further stated:

> [Brandi] agrees and it is ORDERED that if she fails in a willful or material way to return the children to [Jeffrey] pursuant to the scheduled return on any visit, she is waiving any future visits by the children with her in her home state, wherever that may be.

In 2009 and 2010, Brandi had visitation with the children as set forth in the court's order. At the end of the summer 2010 visit, Brandi did not return C.M. to Jeffrey at the scheduled time. Brandi testified she did not return C.M. because "he wanted to stay." Jeffrey traveled to Washington and brought C.M. back to Iowa. Relying on the visitation-waiver provision set forth above, Jeffrey did not allow the children to go to Washington to see Brandi at Christmas of 2010 or at all during 2011. In March 2012, Jeffrey called Brandi and told her she "needed to take" C.M. According to Brandi, Jeffrey said C.M. was "out of control, that [Jeffrey] could no longer handle him in the household and that he needed to leave immediately, that it couldn't wait until school was out." Brandi made arrangements for C.M. to come to Washington "on the next plane." C.M. has lived with Brandi since March 2012; C.M. has not seen Jeffrey and has barely spoken to Jeffrey since his move. Jeffrey's testimony corroborated Brandi's description of the events leading to C.M.'s move to Washington.

After C.M. went to live with Brandi in Washington, Jeffrey began to allow visitation with R.A.M. After her visit with Brandi in 2013, R.A.M. expressed a

---

any future proceedings in this matter. Future jurisdiction over the children shall be in the State of Iowa, provided that [Jeffrey] continues to reside in Iowa."

desire to live with her mother and her brother. She expressed this desire to Brandi in person, by text, and by letter. R.A.M. expressed her desire to Jeffrey as well.

In October 2013, Brandi filed a petition for modification of the parties' custody order regarding R.A.M. and C.M. Jeffrey requested R.A.M. to remain with him and C.M. to remain with Brandi.[2]

At the time of the hearing in July 2014, R.A.M. was fifteen years old. She was a "straight-A" student and active in extracurricular activities. R.A.M. was described as socially outgoing, goal-setting, fit, mature, healthy, and with a good attitude.

C.M. was seventeen years old. Prior to his move to Brandi's, C.M. had been doing poorly in school, and he was stealing from and threatening the younger children in the household. Since his move to Washington in March 2012, C.M. was an "A and B student," and he was participating in debate and volunteering at the Boys' and Girls' Club.

Brandi was thirty-seven years old and in good health, aside from a back injury. She was married to Patrick , and since 2008 had lived in a three-bedroom log cabin on an acreage located about two hours north of Seattle. C.M. and Brandi's father also lived there. Brandi had not been employed since she sustained a back injury two years prior. She had experience in waitressing, nursing home care, and managing a camping resort.

---

[2] Jeffrey also asked that Brandi be found in contempt for failing to pay child support. He does not appeal the district court's resolution of that issue.

Jeffrey was forty-five years old and in good health. He was married to Julie, and had lived in the same home on an acreage for five years. Julie's three children lived with them (two of whom were about to go to college), as well as Jeffrey and Julie's two young children. Jeffrey had worked as a carpenter for fourteen years and also took care of the farm work on the family's acreage.

In July 2014, following a hearing, the district court entered an order modifying the decree to place physical care of the parties' children with Brandi, with visitation to Jeffrey every summer and one week over Christmas. Jeffrey was ordered to pay child support. Jeffrey filed a motion for new trial, which the court denied following a hearing. Jeffrey appeals, challenging the court's order modifying physical care of R.A.M.[3] Additional facts will be set forth below as relevant to Jeffrey's contentions on appeal.

## II.    *Standard and Scope of Review*

This modification action was tried in equity and review is de novo. Iowa R. App. P. 6.907; *In re Marriage of Johnson*, 781 N.W.2d 553, 554 (Iowa 2010). Although we are not bound by the findings of the district court, we give them deference because the district court was present to listen to and observe the parties and witnesses and evaluate the parties as custodians. *In re Marriage of Zebecki*, 389 N.W.2d 396, 398 (Iowa 1986); *In re Marriage of Cupples*, 531 N.W.2d 656, 657 (Iowa Ct. App. 1995); *see also* Iowa R .App. P. 6.904(3)(g).

> The children's best interest is the "controlling consideration." *In re Marriage of Leyda*, 355 N.W.2d 862, 865 (Iowa 1984); *see also In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983) ("first and foremost consideration"). Utilizing the best-interest standard "provides the flexibility necessary to consider unique custody issues

---

[3] Jeffrey does not challenge the court's order modifying physical care of C.M.

on a case-by-case basis." *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007).

*In re Marriage of Hoffman*, ___ N.W.2d ___, ___, 2015 WL 2137550, at *4 (Iowa 2015).

### III. Physical Care

Jeffrey contends the parties' dissolution decree should be not modified to place physical care of R.A.M. with Brandi. Once a physical care arrangement is established, the party seeking to modify it bears a heightened burden, and we will modify the arrangement only for the most cogent reasons. *See Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996).

> [T]he applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). Under this standard, Brandi's burden began with the 2009 Maine order. *See In re Marriage of Maher*, 596 N.W.2d 561, 564-65 (Iowa 1999) (an applicant is required to establish "a substantial change in the circumstances of the parties since the entry of the decree *or of any subsequent intervening proceeding that considered the situation of the parties upon application for the same relief*." (emphasis added)).

In his briefing, Jeffrey does not contest the court's finding that circumstances have materially and substantially changed since the Maine court's 2009 order. Based on his concession, we move to the next prong.

If the parent seeking physical care has shown a substantial change in material circumstances, then we consider whether the party has also shown "an ability to minister more effectively to the children's well-being." *Id.* In that regard, "the parent seeking custody must prove an ability to minister more effectively to the children's well-being." *Dale*, 555 N.W.2d at 245. "This strict standard is premised on the principle that once custody of children has been determined, it should be disturbed only for the most cogent reasons." *Id.* The burden on the non-custodial parent is a heavy one. *See Melchiori v. Kooi*, 644 N.W.2d 365, 368-69 (Iowa Ct. App. 2002).

On this bare-bones record, it is difficult to assess which parent would minister more effectively to R.A.M. Because the district court had the benefit of assessing the parents' demeanor, we conclude the court may have discerned characteristics rendering Brandi the superior caretaker. The court's observations, together with the child's preference to live with her mother, which we discuss in more detail below, persuade us to affirm the district court on this element.

Jeffrey claims "R.A.M.'s preference to live with her mother was not nearly as strong as the trial court concluded," and the court relied on "hearsay evidence" about R.A.M.'s preference, and ignored the fact Jeffrey is the one person who raised R.A.M. "into the fine young lady she is." With regard to R.A.M.'s preference to live with Brandi, the court accepted into evidence letters written by R.A.M. dated September 3, 2013 and May 22, 2014.[4] In both letters, R.A.M.

---

[4] The court admitted the letters over Jeffrey's hearsay objections. On appeal, Jeffrey does not allege the court abused its court's discretion in admitting this evidence.

expressed her preference to reside with Brandi and her brother, C.M. Brandi testified that for the past few years R.A.M. said she wished she could stay at Brandi's and that she wished her dad would let her stay there. Jeffrey testified R.A.M. told him at various times in the last year that she wanted to live in Washington.

"Preferences of minor children while not controlling are relevant and cannot be ignored." *In re Marriage of Ellerbroek*, 377 N.W.2d 257, 258 (Iowa Ct. App. 1985). In considering what custody arrangement is in the child's best interest, the court shall consider, among other factors, "[w]hether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity." Iowa Code § 598.41(3)(f); *see Hansen*, 733 N.W.2d at 696 (stating although section 598.41(3) does not expressly apply to physical care decisions, the factors in the statute are relevant considerations); *see also Jones v. Jones*, 175 N.W.2d 389, 391 (Iowa 1970) ("[W]hen a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment, his or her wishes, though not controlling, may be considered by the court, with other relevant factors, in determining child custody rights."). In determining the weight to give the child's preference, the court also considers the intellectual and emotional make-up of the child, the child's relationship with family members, and the reason for the child's decision. *See In re Marriage of Jahnel*, 506 N.W.2d 473, 475 (Iowa Ct. App. 1993) (citing *Ellerbroek*, 377 N.W.2d at 258-59). Although R.A.M's preference is significant in our view, our cases indicate it is entitled to less weight in this modification action than it would be given when allocating physical care in an original custody

proceeding. *See In re Marriage of Behn*, 416 N.W.2d 100, 102 (Iowa Ct. App. 1987). That a child's preference is afforded less weight in a modification proceeding than in an original action has been frequently cited as a general proposition applicable to all situations. But, we note our supreme court recently observed, this distinction has been noted by Iowa courts where, unlike here, a child's preference seems to be rooted in resistance to a physical care provider's relocation. *See Hoffman*, ___N.W. at ___, 2015 WL 2137550, at *7 (citing cases).

Although the ultimate question of whether Brandi can provide a superior home is far more complicated than merely considering which parent R.A.M. wants to live with, in this case, we agree with the district court's conclusion that R.A.M.'s preference should be entitled to considerable weight. As the court stated:

> R.A.M. is fifteen years of age. She is a straight A student in the Riverside School System, and she is third her class. She is active with extracurricular activities, including Volleyball. R.A.M. is interested in culinary arts and wants to pursue education in that area after high school. R.A.M. was described as socially outgoing, goal-setting, fit, mature, healthy, and with a good attitude.
> . . . .
> R.A.M. has expressed her preference to reside with Brandi. There is no evidence that either parent pressured R.A.M. to state this preference. The evidence suggests that R.A.M.'s preference is based, in part, on a desire to live with C.M. Evidence was presented that R.A.M.'s preference is based, in part, on her perception of the quality of education that she will receive in Washington as opposed to Iowa. No evidence was presented that there is an objective difference in the quality of education, although there is a larger school for R.A.M. in Washington. Evidence was presented that R.A.M. gets along well with her step-father, Patrick Norbert. Evidence was presented that R.A.M. feels her relationship with her step-mother, Julie Meyer, is strained. Given R.A.M.'s academic performance, maturity, and the reasons she has given for

her parental preference, her preference is entitled to considerable weight.

In its order denying Jeffrey's motion for new trial, the district court indicated "[T]he preference to avoid separating siblings – R.A.M. and C.M. – was also a consideration" in the court's decision to award Brandi physical care of R.A.M. *See In re Marriage of Will*, 489 N.W.2d 394, 398 (Iowa 1992) ("There is a presumption that siblings should not be separated."). Jeffrey claims the preference to keep siblings together "is not persuasive" in this situation because C.M. will turn eighteen in May 2015 "and will be entitled to live wherever he wants," so "there's no assurance [C.M.] will choose to remain in his mother's home." He further points out C.M. expressed an interest in attending a Seattle art institute, located some two hours from his mother's home, after graduating from high school. Asked about R.A.M.'s post-high school plans, Brandi testified that R.A.M. wanted to attend the culinary arts program at the University of Washington, also located in Seattle. There was testimony that C.M. and R.A.M. had a good relationship and "pretty much do everything together."

Brandi also testified with regard to R.A.M.'s strong relationship with her husband, Patrick. Brandi described her encouragement of R.A.M.'s relationship with Jeffrey. Jeffrey offered no evidence to dispute this testimony. As to communicating with Jeffrey, Brandi testified C.M. and R.A.M. "don't feel that they can communicate openly with him, that he will get angry if it's not something that he would like to hear or that he wants to talk about, that he will just shut down and be silent." She further testified C.M. and R.A.M. told her they "don't do much interaction with" Jeffrey's wife–"they don't talk to her."

Our result is controlled by the record before us. No one but Brandi and Jeffrey testified at the trial. It is not apparent from the record as to why R.A.M. did not testify. Nevertheless, in our de novo review, we conclude Brandi fulfilled her burden of proving both a substantial change in circumstances and that she can provide superior care for R.A.M. such that modification of the physical care arrangement is warranted. We affirm the court's order placing physical care of R.A.M. with Brandi.

## IV. Motion for New Trial

Jeffrey challenges the district court's denial of his motion for new trial. In support of his contention, Jeffrey alleges the trial lasted "less than two hours" such that the court "did not get the full picture concerning R.A.M.'s preference as to custody" in light of newly discovered evidence, which he alleged additional witnesses could have testified to. *See Benson v. Richardson*, 537 N.W.2d 748, 762-63 (Iowa 1995) ("Under Iowa law, 'newly discovered evidence' sufficient to merit a new trial is evidence which existed at the time of trial, but which, for excusable reasons, the party was unable to produce at the time.").

In denying Jeffrey's motion, the district court stated:

> In his motion, Jeffrey urged that the court should have heard testimony from R.A.M., Julie Meyer, and Julie's daughters, Reagan and Michaela. However, nothing prevented Jeffrey from calling those witnesses at the trial. Julie Meyer was listed as a witness. The matter was scheduled for a full day trial and the presentation of evidence did not consume the full allotted time. Jeffrey had ample time to present evidence on the day of trial. The case had been filed for nine months. Jeffrey had ample time to prepare for trial. Jeffrey has not demonstrated that he has newly discovered evidence that he could not have discovered before trial with reasonable diligence. Jeffrey has not demonstrated that irregularities in the proceedings denied him a fair trial.

We note,

> Our scope of review of a ruling on a motion for a new trial depends on the grounds asserted in the motion. To the extent the motion is based on a discretionary ground, we review it for an abuse of discretion. But if the motion is based on a legal question, our review is on error. In discretionary matters, the trial court is accorded broad but not unlimited discretion.
>
> An abuse of discretion is found when the trial court has clearly exercised its discretion on untenable grounds or acted unreasonably.

*In re Marriage of Wagner*, 604 N.W.2d 605, 608 (Iowa 2000) (citations omitted).

A party seeking a new trial on grounds of newly discovered evidence must demonstrate three things: (1) the evidence is newly discovered and could not, in the exercise of due diligence, have been discovered prior to the conclusion of the trial; (2) the evidence is material and not merely cumulative or impeaching; and (3) the evidence will probably change the result if a new trial is granted. *See In re Marriage of Swanson*, No. 10-0897, 2011 WL 1584437, at *3 (Iowa Ct. App. 2011). Here, Jeffrey's motion fails on the first element and we therefore find no abuse of the district court's broad discretion. We affirm on this issue.

## V. Attorney Fees

Brandi seeks attorney fees for this appeal. An award of appellate attorney fees is not a matter of right but rests within this court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). We consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *Id.* In consideration of these factors, we decline to award appellate attorney fees to Brandi.

## VI. *Conclusion*

We affirm the decision of the district court modifying a dissolution decree to place physical care of the parties' child R.A.M. with Brandi. Costs on appeal are assessed to Jeffrey.

**AFFIRMED.**

Vaitheswaran, J., concurs; Danilson, C.J., dissents.

**DANILSON, C.J.** (dissenting)

I respectfully dissent. Without more evidence to explain why the child apparently wants to live with her mother, I would not grant modification under these facts and in consideration of our supreme court's recent ruling in *In re Marriage of Hoffman*, ___ N.W.2d ___, 2015 WL 2137550, at *7 (Iowa 2015).